2016 IL App (1st) 141765

FIRST DIVISION
March 31, 2016

No. 1-14-1765

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) | Appeal from the |
| | ) | Circuit Court of |
| Plaintiff-Appellee, | ) | Cook County. |
| | ) | |
| v. | ) | No. 11 CR 12001 |
| | ) | |
| PARNELL FULTON, | ) | Honorable |
| | ) | Clayton J. Crane, |
| Defendant-Appellant. | ) | Judge Presiding. |

PRESIDING JUSTICE LIU delivered the judgment of the court, with opinion.
Justice Cunningham and Justice Connors concurred in the judgment and opinion.

**OPINION**

¶ 1    Defendant was convicted of being an armed habitual criminal, aggravated unlawful use of a weapon, and unlawful use of a weapon by a felon. On appeal, he contends that his armed habitual criminal conviction subjected him to an improper double enhancement, and that the armed habitual criminal statute violates substantive due process because it potentially criminalizes innocent conduct. We find that defendant was not subjected to improper double enhancement where his conviction for delivery of a controlled substance was only used once, as a predicate felony, to support his conviction as an armed habitual criminal. Furthermore, the armed habitual criminal statute is not unconstitutional where the statute is rationally related to the public interest it serves and defendant failed to demonstrate that the statute could not be constitutionally applied in any set of circumstances. For these reasons, we affirm the judgment of the circuit court.

¶ 2                                     BACKGROUND

¶ 3     Defendant, Parnell Fulton, was charged by information with being an armed habitual criminal (count I), four counts of aggravated unlawful useful of a weapon (counts II through V), and two counts of unlawful use of a weapon by a felon (counts VI and VII). Following a bench trial, the trial court found him guilty on all counts. Defendant was sentenced to a term of six years' imprisonment each for his armed habitual criminal conviction and his aggravated unlawful use of a weapon conviction, to run concurrently. The remaining counts were merged into the armed habitual criminal count.

¶ 4     The following evidence was adduced during defendant's trial in September of 2013. Officer Tyson Colvin testified that on July 14, 2011, he was with a group of 10 to 12 other officers when they received information that weapons "were being kept" in a green Cadillac "with an off color bumper," which was parked near 4200 West Adams Street in Chicago, Illinois. At approximately 6:30 p.m., the officers proceeded to the area where Officer Colvin saw the Cadillac, although no one was in or around the vehicle at the time. He set up surveillance to watch the vehicle and, approximately 30 minutes later, saw defendant approach the vehicle, open the driver's side door, and "bend over into the vehicle." Officer Colvin notified his fellow officers and two "enforcement cars" approached defendant, one from each direction on Adams Street. When defendant noticed the squad car approaching from the west, he left the vehicle and started walking east on Adams Street. Shortly after, defendant was detained by the officers in the car that approached from the west.

¶ 5     Officer Robert Blomquist testified that on July 14, 2011, he and his partner, Officer Gary McGovern, along with a larger team of officers, had received information that a green Cadillac "possibly had a weapon in it." Officers Blomquist and McGovern were assigned to enforcement

and were posted at Jackson Boulevard and Kildare Avenue. At approximately 7 p.m., they received information that a person had approached the driver's side of the green Cadillac, "opened the door, made some sort of the [*sic*] movement that [Officer Colvin] was not sure about at that time, and that's when he called for enforcement to come in." According to Officer Blomquist, he and his partner drove toward the green Cadillac's location and then drove east on Adams Street, toward the green Cadillac. Another enforcement vehicle approached the Cadillac from the other direction, and there was a third enforcement vehicle behind his squad car. As they approached, Officer Blomquist saw defendant crossing Adams Street, and said it "looked like he was coming from the green Cadillac." He testified that he also observed "a brown handle [of] what looked to be like a butt of a .38 revolver" protruding from defendant's right pocket. When the officers were about 10 feet away from defendant, they ordered him to raise his hands, and Officer Blomquist recovered "a .38 caliber Smith & Wesson fully loaded revolver" from defendant's right front pocket. Defendant was arrested and, after receiving his *Miranda* rights, he made a statement, saying that "he had that gun for protection because his cousin was shot."

¶ 6     The State then entered two certified convictions of defendant into evidence: (1) a 2007 conviction for unlawful use of a weapon by a felon in case number 07 CR 11926; and (2) a 2006 conviction for manufacture and delivery of a controlled substance in case number 06 CR 3407. Additionally, the State entered a FOID certification for defendant, which stated that "defendant did not have a currently valid FOID card issued to him on the date in question." The parties also stipulated that the gun recovered from defendant was tested for fingerprints and the exam "resulted in a negative finding for the presence of any ridge impressions."

¶ 7                                    II. ANALYSIS

¶ 8                              A. Double Enhancement

¶ 9    Defendant first contends that he was subjected to an improper double enhancement because his 2006 conviction for delivery of a controlled substance was used twice to support the armed habitual criminal conviction: once as its own predicate felony and once as an element of the second predicate felony, a 2007 conviction for unlawful use of a weapon by a felon (UUWF). An impermissible double enhancement occurs when either: (1) a single factor is used as an element of an offense and as a "basis for imposing 'a harsher sentence than might otherwise have been imposed' "; or (2) "when the same factor is used twice to elevate the severity of the offense itself." *People v. Phelps*, 211 Ill. 2d 1, 12-13 (2004) (quoting *People v. Gonzalez*, 151 Ill. 2d 79, 83-84 (1992)). Our supreme court has explained that "[t]he reasoning behind this prohibition is that it is assumed that the legislature, in determining the appropriate range of punishment for a criminal offense, necessarily took into account the factors inherent in the offense." *Gonzalez*, 151 Ill. 2d at 84. Where our legislature "designates the sentences which may be imposed for each class of offenses," it "necessarily considers the factors that make up each offense in that class." *Id.* "Thus, to use one of those same factors that make up the offense as [a] basis for imposing a harsher penalty than might otherwise be imposed constitutes a double use of a single factor." (Emphasis omitted.) *Id.* Whether a defendant has been subject to an improper double enhancement is a question of statutory construction, which we review *de novo*. *Phelps*, 211 Ill. 2d at 12.

¶ 10    The statutory provision at issue here, section 24-1.7 of the Criminal Code of 2012 (Code), provides in pertinent part:

"(a) A person commits the offense of being an armed habitual criminal if he *** possesses *** any firearm after having been convicted of a total of 2 or more times any combination of the following offenses:

(1) a forcible felony ***;

(2) unlawful use of a weapon by a felon ***; or

(3) any violation of the Illinois Controlled Substances Act *** that is punishable as a Class 3 felony or higher.

(b) Sentence. Being an armed habitual criminal is a Class X felony." 720 ILCS 5/24-1.7 (West 2012).

¶ 11    This court recently considered the same question defendant presents in *People v. Johnson*, 2015 IL App (1st) 133663. In *Johnson*, the defendant was convicted as an armed habitual criminal based on his possession of a weapon after having been previously convicted of residential burglary, which qualifies as a forcible felony pursuant to section 2-8 of the Code (720 ILCS 5/2-8 (West 2012)), and UUWF (720 ILCS 5/24-1.1 (West 2012)). *Johnson*, 2015 IL App (1st) 133663, ¶ 16. He argued on appeal that he was subject to an improper double enhancement because his prior residential burglary conviction "was used to prove both predicate felonies of the armed habitual criminal offense-once by itself, and then again as an element of the second predicate felony of UUWF." *Id*. ¶ 13. This court first noted that both of the predicate offenses relied on by the trial court were "clearly enumerated" by section 24-1.7 of the Code "as valid offenses upon which to base an armed habitual criminal conviction." *Id*. ¶ 16. However, we further observed that the "fact that the residential burglary conviction was the felony upon which defendant's UUWF conviction was based does not negate the validity of the two offenses as the

predicate offenses for defendant's armed habitual criminal conviction." *Id*. Our rationale for this proposition was as follows:

> "Finding that a UUWF conviction could not be predicated on the same conviction (here, residential burglary) as that used for one of the predicate offenses required for an armed habitual criminal conviction would render the armed habitual criminal statute illogical. If defendant's construction of the armed habitual criminal statute were to be accepted, any defendant whose armed habitual criminal conviction consisted of the offense of UUWF would then have to have a third conviction—one that did not serve as a predicate offense to his UUWF conviction. Defendant's conclusion reads into the armed habitual criminal statute an element that is not there: that a court can only use the predicate felony of UUWF if that UUWF conviction is based on a felony other than the one used as the second predicate felony for the armed habitual criminal conviction. In other words, when using UUWF as a predicate felony for an armed habitual criminal conviction, the offender would have to have at least three prior felony convictions instead of two. There is no such language in the armed habitual criminal statute, and we refuse to read it into the statute. [Citation.] Accordingly, we find that there was no improper double enhancement in this case." *Id*. ¶ 18.

¶ 12     Similarly, in the appeal now before us, defendant's armed habitual criminal conviction was based on two prior convictions: (1) delivery of a controlled substance, a Class 1 felony under the Illinois Controlled Substances Act (720 ILCS 570/401(c)(1) (West 2006)); and

(2) UUWF (720 ILCS 5/24-1.1 (West 2006)). Both predicate felony convictions are clearly enumerated as valid offenses upon which to base an armed habitual criminal conviction. 720 ILCS 5/24-1.7 (West 2012). As the State points out, "no single factor was used both as an element of the offense and as a factor to impose a harsher sentence." That the 2006 delivery of a controlled substance conviction supported his 2007 UUWF conviction "does not negate the validity of the two offenses as the predicate offenses" for his armed habitual criminal conviction. *Johnson*, 2015 IL App (1st) 133663, ¶ 16. Moreover, requiring a third predicate felony offense would add a new element to the statute, rendering the statute "illogical" as we noted in *Johnson*, and we decline to read such a requirement into the statute. Accordingly, we find that no double enhancement resulted from defendant's conviction as an armed habitual criminal based on his 2006 and 2007 convictions.

¶ 13    In support of his argument, defendant relies on *People v. Del Percio*, 105 Ill. 2d 372 (1985) and the case it interpreted, *People v. Haron*, 85 Ill. 2d 261 (1981). These cases are distinguishable. Both *Del Percio* and *Haron* involved defendants who were convicted of armed violence, an offense which, at that time, occurred when a person, " 'while armed with a dangerous weapon, *** commits any felony defined by Illinois law.' " *Del Percio*, 105 Ill. 2d at 376 (quoting Ill. Rev. Stat.1979, ch. 38, ¶ 33A-2). In *Haron*, due to the defendant's possession of a pistol during the commission of the offense, his battery charge was enhanced to aggravated battery, and the aggravated battery was used as a predicate offense to charge him with armed violence. *Haron*, 85 Ill. 2d at 264. Our supreme court held that the legislature "did not intend that the presence of a weapon serve to enhance an offense from misdemeanor to felony and also to serve as the basis for a charge of armed violence." *Haron*, 85 Ill. 2d at 278.

¶ 14    In *Del Percio*, the defendant was convicted and sentenced for various offenses related to his use of a shotgun during an attempted robbery, including attempted armed robbery and armed violence predicated on the attempted armed robbery. *Del Percio*, 105 Ill. 2d at 375. The trial court subsequently vacated the judgment on the attempted armed robbery charge as a lesser included offense of armed violence predicated on attempted armed robbery. *Id*. at 374-75. The appellate court affirmed, and the supreme court granted the defendant's petition for leave to appeal. *Id*. at 375. On appeal, the defendant argued that his armed violence conviction resulted in improper double enhancement because his possession of the shotgun during the crime was first used to enhance the offense of attempted robbery to attempted armed robbery, and then to enhance the attempted armed robbery to armed violence. *Del Percio*, 105 Ill. 2d at 376-78. The supreme court agreed, noting that in *Haron* it had found the armed violence statute " 'contemplates the commission of a predicate offense which is a felony without enhancement by the presence of a weapon.' " *Del Percio*, 105 Ill. 2d at 376 (quoting *Haron*, 85 Ill. 2d at 278). The *Del Percio* court further observed that the Illinois Appellate Courts had applied *Haron* in two ways: some finding an improper double enhancement only if the predicate offense was enhanced from a misdemeanor to a felony, but not from a lesser felony to a greater felony; and others finding an improper double enhancement even when the predicate offense was enhanced from a lesser felony to a greater felony. *Del Percio*, 105 Ill. 2d at 377. Concluding that "*Haron* applies whenever a predicate felony is doubly enhanced because of the presence of a weapon," the supreme court held that the use of the shotgun to enhance the defendant's attempted robbery to attempted armed robbery and then again to armed violence was an improper double enhancement. *Del Percio*, 105 Ill. 2d at 377.

¶ 15    Defendant argues that, as in *Del Percio* and *Haron*, "the same factor was used twice in this case in order to enhance the charged offense to Class X armed habitual criminal." However, in those cases, a single factor—the presence of a dangerous weapon—was used both to enhance the predicate offense to a more serious offense, and as an element of the more serious charge of armed violence. The resulting judgments fall squarely within the definition of an improper double enhancement. Here, in contrast, there was no enhancement. Defendant was originally charged as being an armed habitual criminal and the two predicate offenses, delivery of a controlled substance and UUWF, were used only once each as an element of the armed habitual criminal offense. No harsher sentence was imposed and the severity of the offense was never elevated: defendant was charged as an armed habitual criminal, a Class X offense, he was convicted as an armed habitual criminal, and he was sentenced as a Class X offender. Therefore, *Del Percio* and *Haron* are unavailing.

¶ 16                              B. Constitutionality

¶ 17    Defendant next contends that the armed habitual criminal statute is unconstitutional on its face. According to defendant, a twice-convicted felon may obtain a Firearm Owner's Identification (FOID) card pursuant to the Firearm Owners Identification Card Act (FOID Card Act) (430 ILCS 65/0.01 *et seq*. (West 2012)) and article I, section 22, of the Illinois Constitution (Ill. Const. 1970, art. I, § 22). He argues that because the armed habitual criminal statute criminalizes possession of a weapon regardless of whether that person has a FOID card, the armed habitual criminal statute violates substantive due process by "potentially [criminalizing] innocent conduct." *People v. Carpenter*, 228 Ill. 2d 250, 269 (2008).

¶ 18    Initially, the State asserts that defendant does not have standing to challenge the constitutionality of the armed habitual criminal statute because in the proceedings at issue here,

"defendant never claimed to have applied for a FOID Card and there is no evidence in the record that he did." The State concludes that because defendant did not possess a FOID card, his possession of a hand gun was not "innocent conduct" and defendant was not injured by the armed habitual criminal statute.

¶ 19     It is true that for a party to have standing to challenge the constitutionality of a statute, he must be able to show that " 'he has sustained or is in immediate danger of sustaining some direct injury as a result of the statute.' " *People v. Aguilar*, 2013 IL 112116, ¶ 12 (quoting *People v. Mayberry*, 63 Ill. 2d 1, 8 (1976)). However, defendant here is challenging the armed habitual criminal statute as facially unconstitutional, and similar to the defendant in *Aguilar*, he is therefore arguing the statute cannot be enforced against anyone, including himself. See *Aguilar*, 2013 IL 112116, ¶ 12 (noting that the defendant was arguing that two statutes "*themselves* facially violate the second amendment, and that consequently neither statute can be enforced against *anyone*" (emphases in original)). Having been convicted under a statute that he contends is facially unconstitutional—the armed habitual criminal statute—defendant has allegedly suffered the required injury and has standing to challenge the statute's constitutionality.

¶ 20     The constitutionality of a statute is reviewed *de novo*. *People v. Patterson*, 2014 IL 115102, ¶ 90. All statutes are presumed to be constitutional, and the party challenging the statute has the "heavy burden" of overcoming this presumption by clearly establishing a constitutional violation. *Id*. Furthermore, it is our duty to uphold a statute's constitutionality "whenever reasonably possible, resolving any doubts in favor of its validity." *Id*. A facial challenge to a statute, in contrast to an "as applied" challenge, is "the most difficult" because "the challenger must establish that no set of circumstances exists under which the Act would be valid. [Citations.]" (Internal quotation marks omitted.) *People v. Greco*, 204 Ill. 2d 400, 407 (2003).

¶ 21    "The legislature has wide discretion to establish penalties for criminal offenses, but that discretion is limited by the constitutional guarantee that a person may not be deprived of liberty without due process of law." *Carpenter*, 228 Ill. 2d at 267. If the challenged statute does not affect "a fundamental constitutional right," then the rational basis test is used to determine whether the statute comports with substantive due process requirements. *Id*. A statute will be upheld under the rational basis test where "it bears a reasonable relationship to a public interest to be served, and the means adopted are a reasonable method of accomplishing the desired objective." (Internal quotation marks omitted.) *Id*. at 267-68 (quoting *People v. Wright*, 194 Ill. 2d 1, 24 (2000), quoting *People v. Adams*, 144 Ill. 2d 381, 390 (1991)).

¶ 22    The armed habitual criminal statute creates a Class X felony offense for any person who possesses a firearm if they have been previously twice-convicted of a list of enumerated felony offenses, including all forcible felonies, UUWF, and Class 3 or higher drug-related felonies. 720 ICLS 5/24-1.7(a) (West 2012). Under the FOID Card Act, a person who is convicted of a felony may have their FOID card revoked and seized or their application for a FOID card denied. 430 ILCS 65/8(c) (West 2012). However, pursuant to section 10 of the FOID Card Act, such a person "may apply to the Director of State Police or petition the circuit court ***, requesting relief from such prohibition." 430 ILCS 65/10(c) (West 2012). Relief may be granted if the following is established: (1) the applicant has not been convicted of a forcible felony within the 20 years of the application for a FOID card, or at least 20 years have passed since the end of any sentence related to such a conviction; (2) in light of his criminal history and reputation, an applicant "will not be likely to act in a manner dangerous to public safety"; (3) a grant of relief is not contrary to the public interest; and (4) a grant of relief is not contrary to federal law. Pub. Act 97-1131, § 15 (eff. Jan. 1, 2013) (amending 430 ILCS 65/10(c) (West 2012)).

¶ 23    According to defendant, the armed habitual criminal statute violates substantive due process because it "criminalizes wholly innocent conduct" and does not bear a rational relationship to the purpose it is meant to serve. However, this same question was considered in *Johnson*, where we stated:

> "While it may be true that an individual could be twice-convicted of the offenses set forth in the armed habitual criminal statute and still receive a FOID card under certain unlikely circumstances, the invalidity of a statute in one particular set of circumstances is insufficient to prove that a statute is facially unconstitutional. [Citation.] The armed habitual criminal statute was enacted to help protect the public from the threat of violence that arises when repeat offenders possess firearms. [Citation.] The Supreme Court explicitly noted in *District of Columbia v. Heller*, 554 U.S. 570[, 626] (2008), that 'nothing in our opinion should be taken to cast doubt on longstanding prohibitions on the possession of firearms by felons.' [Citation.] *** Accordingly, we find that the potential invalidity of the armed habitual criminal statute in one very unlikely set of circumstances does not render the statute unconstitutional on its face." *Johnson*, 2015 IL App (1st) 133663, ¶ 27.

We see no reason to depart from the holding in *Johnson* and therefore find that the armed habitual criminal statute does not violate substantive due process.

¶ 24    Defendant cites to *Coram v. State of Illinois*, 2013 IL 113867 in support of his argument, but we find that case inapposite. In *Coram*, the supreme court discussed the FOID Card Act but did not consider the constitutionality of the armed habitual criminal statute. *Id*. *Coram* cannot be

considered to be applicable because at the time of that decision, the amended version of section 10 of the FOID Card Act (430 ILCS 65/10 (West 2012)) was not in effect. See *Johnson*, 2015 IL App (1st) 133663, ¶ 29 (noting that the amended FOID Act provision at issue in the case was not in effect when it decided *Coram*). As a result, there was nothing in the statute at the time *Coram* was decided to prevent the trial court from granting that defendant the relief under section 10 that he sought. Here, in contrast, the amended version of section 10 is in effect, and we look to *Johnson*, not *Coram*, for proper guidance.

¶ 25    In addition to finding defendant's one particular set of unlikely circumstances insufficient to render the armed habitual criminal statute facially unconstitutional, we also reject defendant's reliance on *People v. Madrigal*, 241 Ill. 2d 463 (2011) and *Carpenter*, 228 Ill. 2d 250, based on which he argues that the statute fails the rational basis test because it criminalizes "wholly innocent conduct." In *Madrigal*, the supreme court found section 16G-15(a)(7) of the Identity Theft Law (720 ILCS 5/16G-15(a)(7) (West 2008)) was unconstitutional. *Madrigal*, 241 Ill. 2d at 479. Section 16G-15(a)(7) provided that a person committed identity theft when he "knowingly *** uses any personal identification information or personal identification document of another for the purpose of gaining access to any record of the actions taken, communications made or received, or other activities or transactions of that person, without the prior express permission of that person." 720 ILCS 5/16G-15(a)(7) (West 2008). A person convicted of violating section 16G-15(a)(7) was guilty of a Class 3 felony, punishable by up to five years in prison. *Madrigal*, 241 Ill. 2d at 465. The defendant, who was charged with violating section 16G-15(a)(7), moved to dismiss the indictment, arguing in pertinent part that the section failed "to require a culpable mental state and therefore can be read to apply to conduct that is wholly innocent." *Id*. The trial court granted the motion to dismiss on that ground and the State appealed. *Id*. at 465-66.

¶ 26    On appeal, both parties agreed that the purpose of the identity theft statute was "to protect the economy and people of Illinois from the ill-effects of identity theft." *Id*. at 467. The court noted it had "repeatedly held" that a statute violates due process "if it potentially subjects wholly innocent conduct to criminal penalty without requiring a culpable mental state beyond mere knowledge." *Id*. It reasoned that in those instances, the statute does not bear a rational basis to its purpose "because it does not represent a reasonable method of preventing the targeted conduct." *Id*. at 468. Section 16G-15(a)(7) failed the rational basis test because it would "potentially punish as a felony *a wide array of wholly innocent conduct*." (Emphasis added.) *Id*. at 471. The court further explained:

> "For example, doing a computer search through Google or some other search engine or through a social networking site such as Facebook or MySpace, by entering someone's name, could uncover numerous records of actions taken, communications made or received, or other activities or transactions of that person. Thus, the statute as it currently reads would criminalize such innocuous conduct as someone using the internet to look up how their neighbor did in the Chicago Marathon. Moreover, a husband who calls a repair shop for his wife, without her 'prior express permission,' to see if her car is ready, what was wrong, and how much the repair bill is, would be seeking information in violation of the statute." *Id*. at 471-72.

The court concluded that the section's lack of culpable mental state "potentially punishes a significant amount of wholly innocent conduct not related to the statute's purpose" and was not a rational way of "addressing the problem of identity theft." *Id*. at 473.

¶ 27 The statute at issue in *Carpenter* was section 12-612 of the Illinois Vehicle Code (625 ILCS 5/12-612 (West 2004)), under which it was unlawful for a person to own or operate a car that the person knew "to contain a false or secret compartment" or to "to knowingly install, build, or fabricate *** a false or secret compartment" in a car. 625 ILCS 5/12-612(a) (West 2004). Under that statute, a "secret compartment" was defined as "any enclosure that is intended and designed to be used to conceal, hide, and prevent discovery by law enforcement officers of the false or secret compartment, or its contents, and which is integrated into a vehicle." 625 ILCS 5/12-612(b) (West 2004). In reviewing its constitutionality, the supreme court determined that the statute's purpose was likely "the laudable goal of protecting police and punishing those who hide guns and illegal contraband from officers." *Carpenter*, 228 Ill. 2d at 268-69. The court, however, concluded that the statute was not rationally related to the assumed purpose, as it "potentially criminalizes innocent conduct, as it visits the status of felon upon anyone who owns or operates a vehicle he or she knows to contain a false or secret compartment," and pointed out that "[t]he contents of the compartment do not have to be illegal for a conviction to result." *Id*. at 269.

¶ 28 Both *Madrigal* and *Carpenter* are distinguishable from the present case. We find support for this conclusion from the supreme court's reasoning in *People v. Hollins*, 2012 IL 112754. There, the defendant was charged with three counts of child pornography due to various acts involving A.V., "a child whom [he] knew to be under the age of 18 years," when A.V. was 17 years old. *Id*. ¶ 3. The alleged conduct involved the defendant "knowingly" photographing the minor while she was engaged in sexual acts with the defendant. *Id*. ¶¶ 9, 12 (quoting 720 ILCS 5/11-20.1(f)(7) (West 2008)). On appeal, the defendant contended that the child pornography statute, as applied to him, violated due process, arguing that the statute did not bear "a reasonable

relationship to the public interest to be protected because it denie[d] consenting adults the right to engage in private sexual activities of their choice." *Hollins*, 2012 IL 112754, ¶ 16. More specifically, the defendant claimed that the statute's purpose of "protecting children from sexual exploitation and abuse" was not rationally related to his situation where the "child" was 17 years old, and, under Illinois law, "could legally consent to sex" and was involved in a "legal, consensual sexual relationship" with him. *Id*. ¶ 17. Relying on *Madrigal*, the defendant argued that the statute unconstitutionally punished innocent behavior. *Id*. ¶ 26.

¶ 29    Our supreme court rejected the defendant's argument in *Hollins*, and held that the Illinois child pornography statute was constitutional. In this decision, the court cited to the Nebraska Supreme Court decision in *State v. Senters*, 699 N.W.2d 810 (Neb. 2005), which considered a similar statute outlawing child pornography. *Hollins*, 2012 IL 112754, ¶ 24. Under the Nebraska statute, while a person over the age of 16 could consent to sex, "it was still 'unlawful for "a person to knowingly make, publish, direct, create, provide, or in any manner generate any visual depiction of sexually explicit conduct" ' with a person under the age of 18." *Hollins*, 2012 IL 112754, ¶ 20 (quoting *Senters*, 699 N.W.2d at 813, quoting Neb. Rev. Stat. § 28-1464.02(1) (Reissue 1995)). The *Senters* court had concluded that the statute was constitutional, because it was " 'reasonable to conclude that persons 16 and 17 years old, although old enough to consent to sexual relations, may not fully appreciate that today's recording of a private, intimate moment may be the Internet's biggest hit next week.' " *Hollins*, 2012 IL 112754, ¶ 21 (quoting *Senters*, 699 N.W.2d at 817). Consistent with the reasoning of the *Senters* court and a similar federal case (see *United States v. Bach*, 400 F.3d 622 (8th Cir. 2005)), our supreme court determined that the statutory prohibition against photographing or videotaping minors bore a rational relationship to

the statute's purpose of protecting children from sexual abuse and exploitation. *Hollins*, 2012 IL 112754, ¶ 24.

¶ 30    As to the defendant's reliance on *Madrigal*, the *Hollins* court stated:

> "Unlike the hypothetical situation discussed in *Madrigal*, the conduct at issue here is not 'wholly innocent.' In *Madrigal*, the term 'innocent conduct' meant conduct not germane to the harm identified by the legislature, in that the conduct was wholly unrelated to the legislature's purpose in enacting the law. [Citation.] Here, while it is true that the underlying conduct being recorded is legal, it is the actual recording of that conduct, and the consequences to the child that flow therefrom, that is the interest being protected by the statute as applied. The legislature's purpose in enacting the statute was not necessarily to protect from the harm in the sexual act itself, but the memorialization of that act, for the reasons discussed above." *Hollins*, 2012 IL 112754, ¶ 28.

¶ 31    For the same reasons the *Hollins* court found *Madrigal* to be inapplicable, we find both *Madrigal* and *Carpenter* are inapplicable to the case before us. Contrary to defendant's assertion that the armed habitual criminal statute seeks to "punish recidivist offenders for committing a *new* gun crime" (emphasis in original), as we noted above, the purpose of the armed habitual criminal statute is "to help protect the public from the threat of violence that arises when repeat offenders *possess* firearms" (emphasis added) (*Johnson*, 2015 IL App (1st) 133663, ¶ 27). Unlike the conduct discussed in *Madrigal* and *Carpenter*, a twice-convicted felon's possession of a firearm is not "wholly innocent" and is, in fact, exactly what the legislature was seeking to prevent in passing the armed habitual criminal statute. The statute's criminalization of a twice-

convicted felon's possession of a weapon is, therefore, rationally related to the purpose of "protect[ing] the public from the threat of violence that arises when repeat offenders possess firearms." *Johnson*, 2015 IL App (1st) 133663, ¶ 27. Moreover, "[t]he Supreme Court explicitly noted in *District of Columbia v. Heller*, 554 U.S. 570 (2008), that 'nothing in our opinion should be taken to cast doubt on longstanding prohibitions on the possession of firearms by felons.' " *Johnson*, 2015 IL App (1st) 133663, ¶ 27 (quoting *Heller*, 554 U.S. at 626). The armed habitual criminal statute does not violate substantive due process and is, therefore, constitutional.

¶ 32                              III.   CONCLUSION

¶ 33    For the foregoing reasons, we affirm the judgment of the trial court.

¶ 34    Affirmed.