2017 IL App (1st) 150146
No. 1-15-0146

THIRD DIVISION
May 17, 2017

_____

IN THE
APPELLATE COURT OF ILLINOIS
FIRST JUDICIAL DISTRICT
_____

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) | Appeal from the Circuit Court |
| | ) | of Cook County. |
| Plaintiff-Appellee, | ) | |
| | ) | |
| v. | ) | No. 13 CR 20313 |
| | ) | |
| DEWAYNE BROWN, | ) | |
| | ) | The Honorable |
| Defendant-Appellant. | ) | James M. Obbish, |
| | ) | Judge Presiding. |

_____

JUSTICE PUCINSKI delivered the judgment of the court, with opinion.
Presiding Justice Fitzgerald Smith and Justice Cobbs concurred in the judgment and opinion.

**OPINION**

¶ 1    Following a bench trial, defendant Dewayne Brown was convicted of the offense of armed habitual criminal. He was sentenced to 8 years' imprisonment and was assessed various fines, fees, and costs. Defendant appeals his conviction, arguing that (1) he was not proved guilty of the offense of armed habitual criminal beyond a reasonable doubt; (2) the armed habitual criminal statute (720 ILCS 5/24-1.7 (West 2012)) is facially unconstitutional because it has the potential to criminalize wholly innocent conduct; and (3) the fines, fees, and costs order must be corrected to apply his presentence incarceration credit toward several fines. For the reasons set

forth herein, we affirm defendant's conviction. We do, however, correct the fines, fees, and costs order.

¶ 2                                                    BACKGROUND

¶ 3         At trial, Officer Brian Rovano testified that on September 25, 2013, at approximately 11:22 p.m., he and his partner, Officer Michael Shrake, were on routine patrol near the area of 49th Street and Ashland when they heard a car alarm sound. The officers discovered the vehicle that was the source of the alarm parked in a nearby parking lot. Upon arriving at the lot, Officer Rovano noticed a couple sitting in a maroon Ford Taurus that was also parked in the same lot. A "very strong smell of cannabis" was emanating from the vehicle. Upon seeing the officers enter the parking lot, defendant exited the front passenger seat of the Taurus and stood by the vehicle. Officer Rovano testified that he exited his own vehicle and began to approach defendant. As he walked closer to the Ford Taurus, Rovano observed the female driver "smoking what appeared to be a cigar filled with cannabis," which she subsequently put down into the car's ashtray. He also noticed a bottle of "Remy liquor" in the middle console of the vehicle. The odor of cannabis was stronger, the closer that he got to the vehicle.

¶ 4         Officer Rovano testified that, for his own safety, he detained and handcuffed defendant. His partner then approached the driver's side of the vehicle and asked the female driver to exit the vehicle. She complied. When asked for her ID, the driver, Brittany Fain, responded that her identification was in the car. In response to her statement, Officer Rovano first retrieved the cannabis and the bottle of Remy from the vehicle and then began searching for Fain's ID card. As he did so, he noticed her purse on the floor on the front passenger side of the vehicle. The purse was open, and the handle of a handgun was "sticking out" in "plain view." Officer Rovano testified that he recovered the weapon, which turned out to be a Highpoint "black 45-caliber

semiautomatic handgun." The gun was loaded and "contained one round in the chamber and seven in the magazine." After Officer Rovano removed the weapon from the vehicle, defendant immediately "stated that the weapon was his" and explained that he had put the handgun into Fain's purse. At that point, defendant and Fain were both placed under arrest and transported to the local police station. On the way to the station, defendant stated that he wanted to apologize to Fain for placing his gun in her purse.

¶ 5        Defendant was advised of his *Miranda* rights after he was processed at the station. He ultimately elected to waive his rights and speak to the officers. Defendant then stated that he "bought the gun two days ago" for $150 from a Hispanic male whose street name was Julio. Defendant made the purchase "from a place around 49th and Laflin or Ashland." He explained that he wanted the weapon "for protection." Defendant identified the weapon as a "Highpoint" and called it a "bull**** a** gun" because those types of guns "usually jam." Defendant informed the officers that he hoped "the charges wouldn't be approved" because "if gets charged again *** he is done."

¶ 6        On cross-examination, Officer Rovano testified that Fain was the owner of the Ford Taurus in which the cannabis, liquor, and handgun were recovered.

¶ 7        Chicago Police Officer Shrake confirmed that he and his partner encountered defendant at approximately 11:20 p.m. on September 25, 2013, in a parking lot located at 4847 South Ashland Avenue. He further confirmed that a handgun was recovered from the vehicle in which defendant had been seated and that defendant claimed ownership of the gun and apologized to Fain for placing his weapon in her purse. Once defendant was advised of his *Miranda* rights, he provided details about the manner in which he had purchased the weapon. Defendant also

expressed his concern about his criminal history and being charged as an armed habitual criminal.

¶ 8       Thereafter, the State proceeded by way of stipulation. The parties stipulated that on the date of the incident, defendant was "not in possession of a valid FOID [Firearm Owners Identification] card as would have been issued by the Illinois State Police." The State also entered into evidence certified copies of defendant's prior convictions, including a 1998 conviction for attempted armed robbery, a 2006 robbery conviction, and a 2012 possession of a controlled substance conviction.

¶ 9       After the State rested its case-in-chief, defendant elected not to testify, and the defense rested without presenting any evidence. After hearing closing arguments from the parties, the circuit court concluded that the State had sustained its burden of proving defendant guilty of the offense of armed habitual criminal beyond a reasonable doubt.

¶ 10      The cause subsequently proceeded to a sentencing hearing. After hearing arguments advanced in aggravation and mitigation, the circuit court sentenced defendant to 8 years' imprisonment. The circuit court also assessed a number of fines, fees, and costs, totaling $394. The court's order also credited defendant with 195 days of presentence custody, which entitled him to a total of $975 in presentence incarceration credit. This appeal followed.

¶ 11                                ANALYSIS

¶ 12                        Sufficiency of the Evidence

¶ 13      Defendant first challenges the sufficiency of the evidence. Specifically, he argues that the State failed to prove beyond a reasonable doubt that his prior conviction for attempted armed robbery was a forcible felony sufficient to satisfy the elements of the offense of armed habitual criminal. He submits that attempted armed robbery is not inherently a forcible felony and that the

State failed to present any specific details pertaining to his attempted armed robbery conviction to establish that the offense "involved any kind of use or threat of physical force or violence," such that it could be categorized as a forcible felony. Given the lack of evidence that he committed two predicate forcible felony offenses, defendant argues that State did not sustain its burden of proving him guilty of the offense of armed habitual criminal beyond a reasonable doubt.

¶ 14    The State responds that "every attempt[ed] armed robbery inherently includes the possibility of the threat of physical force or violence sufficient to qualify as a forcible felony." Therefore, the State asserts that the circuit court properly found that the State met its burden of establishing the elements of the offense of armed habitual criminal beyond a reasonable doubt.

¶ 15    Section 24-1.7 of the Illinois Criminal Code of 2012 (Criminal Code or Code) sets forth the offense of armed habitual criminal and provides, in pertinent part, as follows:

>    "(a) A person commits the offense of being an armed habitual criminal if he or she receives, sells, possesses, or transfers any firearm after having been convicted a total of 2 or more times of any combination of the following offenses:

>    (1) A forcible felony as defined in Section 2-8 of this Code[.]" 720 ILCS 5/24-1.7(a)(1) (West 2012).

¶ 16    "The armed habitual criminal statute adopts the definition of forcible felony from section 2-8 of the Criminal Code ***." *People v. Thomas*, 407 Ill. App. 3d 136, 139 (2011). That provision provides:

>    " 'Forcible felony' means treason, first degree murder, second degree murder, predatory criminal sexual assault of a child, aggravated criminal sexual assault, criminal sexual assault, robbery, burglary, residential burglary, aggravated arson, arson,

aggravated kidnaping, kidnaping, aggravated battery resulting in great bodily harm or permanent disability or disfigurement *and any other felony which involves the use or threat of physical force or violence against any individual*." (Emphasis added.) 720 ILCS 5/2-8 (West 2012).

¶ 17    To sustain a conviction for the offense of armed habitual criminal, the State must prove the defendant's prior convictions as well as his present conduct beyond a reasonable doubt. *People v. Adams*, 404 Ill. App. 3d 405, 412 (2010). Here, defendant was charged with the offense of armed habitual criminal on the basis that he "knowingly or intentionally possessed a firearm *** after having been convicted of robbery under case number 05CR1458001 and attempt armed robbery under case number 98CR1180301." Defendant does not dispute that his conviction for robbery is a forcible felony that qualified as a predicate offense for purposes of the armed habitual criminal statute. Instead, the basis for his challenge to the sufficiency of the evidence pertains to his prior conviction for attempted armed robbery. Specifically, he argues that that the offense of attempted armed robbery is not an inherently forcible felony because "the use or threat of force against an individual is not inherent in every attempt[ed] armed robbery." Accordingly, because the State simply presented certified copies of his convictions and did not detail the circumstances surrounding his attempted armed robbery conviction, defendant argues that there was insufficient evidence that his crime involved the use or threat of force against another individual. We disagree.

¶ 18    Where, as here, an offense is not one of the specifically delineated offenses set forth in section 2-8 of the Criminal Code, it will only be deemed to constitute a forcible felony if it falls within section 2-8's "residual clause" (*People v. Sanderson*, 2016 IL App (1st) 141381, ¶ 5; *People v. White*, 2015 IL App (1st) 131111, ¶ 30) in that it involved "the use or threat of physical

force or violence against any individual" (720 ILCS 5/2-8 (West 2012)). Importantly, "[t]he Illinois statute that defines 'forcible felony' does not require the actual infliction of physical injury; instead, the statute requires only the 'use or *threat* of physical force or violence.' " (Emphasis added.) *Thomas*, 407 Ill. App. 3d at 140 (quoting 720 ILCS 5/2-8 (West 2006)). Accordingly, courts construing this provision have emphasized that "[i]t is the *contemplation* that force or violence against an individual *might* be involved combined with the implied willingness to use force or violence against an individual that makes a felony a forcible felony under the residual category of section 2-8." (Emphasis added.) *People v. Belk*, 203 Ill. 2d 187, 196 (2003); see also *Sanderson*, 2016 IL App (1st) 141381, ¶ 5; *Thomas*, 407 Ill. App. 3d at 140.

¶ 19 Keeping this rationale in mind, we turn to the statutory definition of the specific offense at issue—attempted armed robbery—in order to determine whether that offense constitutes an inherently forcible felony. See, *e.g.*, *White*, 2015 IL App (1st) 131111, ¶ 33 (recognizing that where the State presents no evidence pertaining to the circumstances surrounding a defendant's prior conviction, the relevant inquiry is whether the underlying predicate offense is an inherently forcible felony to satisfy the elements of the armed habitual criminal statute); *Thomas*, 407 Ill. App. 3d at 139 (same). Pursuant to Illinois law, a person commits the offense of armed robbery when he or she commits the offense of robbery, which is an enumerated forcible felony that entails knowingly taking property from a person or the presence of another by the use of force or by threatening the imminent use of force, and:

"(1) he or she carries on or about his or her person or is otherwise armed with a dangerous weapon other than a firearm; or

(2) he or she carries on or about his or her person or is otherwise armed with a firearm; or

(3) he or she, during the commission of the offense, personally discharges a firearm; or

(4) he or she, during the commission of the offense, personally discharges a firearm that proximately causes great bodily harm, permanent disability, permanent disfigurement, or death to another person." 720 ILCS 5/18-2(a) (West 2012).

¶ 20    A person commits the offense of attempted armed robbery, in turn, when, with the intent to commit armed robbery, he or she takes a substantial step toward the commission of that offense. 720 ILCS 5/8-4(a) (West 2012); *People v. Robinson*, 92 Ill. App. 3d 397, 399 (1981).

¶ 21    Taking into account these statutory definitions, the offense of attempted armed robbery requires evidence that a defendant possessed the specific intent to knowingly take property from another by threat or use of force while armed with a firearm or other dangerous weapon and took a substantial step to accomplish that objective. 720 ILCS 5/8-4(a), 18-2(a) (West 2012). Thus, by virtue of his conviction of that offense, defendant necessarily demonstrated the requisite contemplation or willingness to use force by virtue of the fact that he was armed with a firearm or other dangerous weapon and took a substantial step to deprive another person of property by threat or use of force. See, *e.g.*, *Belk*, 203 Ill. 2d at 196 (recognizing that the fact that an individual is armed "necessarily implies that [he] contemplated that the use of force or violence against an individual might be involved and that [he was] willing to use such force or violence" (emphasis omitted)).

¶ 22    Accordingly, we hold that the offense of attempted armed robbery qualifies as an inherently forcible felony for purposes of the armed habitual criminal statute.[1] As such, we reject

---

[1]We note that there are no published cases resolving this issue; however, this court has previously issued two unpublished decisions in which we have concluded that the offense of attempted armed robbery qualifies as a forcible felony for purposes of the armed habitual criminal statute. See, *e.g.*, *People v. Sanders*, 2016 IL App (1st) 140208-U, ¶ 38; *People v. Lomax*, 2015 IL App (1st) 133253-U, ¶ 12.

defendant's challenge to the sufficiency of the evidence and conclude that the certified copies of defendant's convictions for robbery and attempted armed robbery provided sufficient evidence to establish that his subsequent handgun possession violated the Illinois armed habitual criminal statute.

¶ 23                    Constitutionality of the Armed Habitual Criminal Statute

¶ 24        Defendant next challenges the constitutionality of the Illinois armed habitual criminal statute. Specifically, he argues that the statute is "facially unconstitutional because it criminalizes both the lawful and unlawful possession of firearms." Given that the statute criminalizes the possession of a firearm regardless of whether or not a person has a FOID card, defendant argues that the statute violates the tenets of due process because it "potentially criminalizes innocent conduct."

¶ 25        The State responds that defendant's constitutional challenge is without merit. Specifically, the State argues that the Illinois armed habitual criminal statute is facially constitutional and satisfies the due process clause because "it is a reasonable legislative response to the ongoing problems of convicted felons acquiring and possessing firearms."

¶ 26        The constitutionality of a statute is an issue of law that is subject to *de novo* review. *People v. Patterson*, 2014 IL 115102, ¶ 90; *People v. Sharpe*, 216 Ill. 2d 481, 486-87 (2005); *People v. Johnson*, 2015 IL App (1st) 133663, ¶ 25. Because statutes carry a "strong presumption" of constitutionality, it is the burden of the party challenging the constitutionality of a given statute to "clearly establish" that the statute violates constitutional protections. *Sharpe*, 216 Ill. 2d at 487. A reviewing court has a duty to uphold a statute's constitutionality whenever it is reasonably possible to do so. *Patterson*, 2014 IL 115102, ¶ 90; *Johnson*, 2015 IL App (1st) 133663, ¶ 25. Accordingly, all doubts must be construed in favor of a statute's validity and

constitutionality. *Patterson*, 2014 IL 115102, ¶ 90; *People v. Fulton*, 2016 IL App (1st) 141765, ¶ 20. Courts have recognized that succeeding on a facial challenge, rather than on an "as applied" challenge to a statute's constitutionality, is "extremely difficult, requiring a showing that the statute would be invalid under *any* imaginable set of circumstances. The invalidity of the statute in one particular set of circumstances is insufficient to prove its facial invalidity." (Emphasis in original.) *In re M.T.*, 221 Ill. 2d 517, 536-37 (2006). That is, " '[s]o long as there exists a situation in which a statute could be validly applied, a facial challenge must fail.' " *People v. Huddleston*, 212 Ill. 3d 107, 145 (2004) (quoting *Hill v. Cowan*, 202 Ill. 2d 151, 157 (2002)). Where, as here, the statute does not implicate a "fundamental constitutional right," the statute will be reviewed using the "highly deferential rational basis test." *People v. Madrigal*, 241 Ill. 2d 463, 466 (2011). In accordance with that test, a statute will be upheld "so long as it bears a rational relationship to a legitimate legislative purpose and is neither arbitrary nor unreasonable." *People v. Hollins*, 2012 IL 112754, ¶ 15. Keeping these standards in mind, we turn to the relevant statute at issue—the Illinois armed habitual criminal statute, which is set forth in section 24-1.7 of the Criminal Code (720 ILCS 5/24-1.7 (West 2012)).

¶ 27    As set forth above, the armed habitual criminal statute provides, in pertinent part, that a person commits the offense of armed habitual criminal if he possesses any firearm after having been twice previously convicted of certain specified serious offenses, including two forcible felonies. 720 ILCS 5/24-1.7(a)(1) (West 2012). This provision was enacted to protect the public from the threat of violence that arises when recidivist violent offenders possess firearms. *People v. Bryant*, 2016 IL App (1st) 140421, ¶ 17; *People v. Davis*, 408 Ill. App. 3d 747, 750 (2011); *Adams*, 404 Ill. App. 3d at 411 (2010). In order to effectuate this goal, the statute imposes harsher penalties on all felons who have twice previously been convicted of serious offenses and

who are subsequently found to be in possession of a firearm. 720 ILCS 5/24-1.7(b) (West 2012) (classifying the offense of armed habitual criminal as a Class X felony).

¶ 28    Defendant does not dispute that the State has a legitimate interest in protecting the public's safety or that keeping guns out of the hands of violent repeat criminal offenders effectuates that legitimate interest. Rather, he contends that the means adopted to accomplish that objective and further the State's legitimate interest is improper because the language of the armed habitual criminal statute is too broad and has the potential to criminalize wholly innocent conduct. He argues, in pertinent part, that in certain circumstances, persons with prior felony convictions may lawfully be awarded a FOID card and possess a gun in accordance with provisions of the Firearm Owners Identification Card Act (FOID Act) (430 ILCS 65/1 *et seq*. (West 2012)). That is, although a person convicted of a felony may have his FOID card revoked or his application for a FOID card denied (430 ILCS 65/8(c) (West 2012)), defendant observes that in accordance with 10(c) of the FOID Act, an applicant may appeal that decision and be granted relief if the applicant establishes that (1) he "has not been convicted of a forcible felony within 20 years of the application for a [FOID card], or at least 20 years have passed since the end of any period of imprisonment imposed in relation to that conviction; (2) the circumstances regarding a criminal conviction, where applicable, the applicant's criminal history, and his reputation are such that the applicant will not be likely to act in a manner dangerous to public safety; (3) granting relief would not be contrary to the public interest; and (4) granting relief would not be contrary to federal law." (amending 430 ILCS 65/10(c)(1)-(4)). Because a twice-convicted felon could theoretically obtain a FOID card, defendant argues that the mere possession of a firearm by a twice-convicted felon is not, by itself, a crime and that the armed habitual criminal statute, as written, is not constitutional because it criminalizes wholly innocent

conduct. Instead, defendant argues that that the armed habitual criminal statute's prohibition on gun possession should be applied only to twice-convicted felons who did not possess a FOID card at the time they were found to be in possession of a firearm. [2]

¶ 29 This court, however, has previously rejected this same constitutional challenge to the armed habitual criminal statute. See *Johnson*, 2015 IL App (1st) 133663; *Fulton*, 2016 IL App (1st) 141765. Specifically, we held:

" 'While it may be true that an individual could be twice-convicted of the offenses set forth in the armed habitual criminal statute and still receive a FOID card under certain unlikely circumstances, the invalidity of a statute in one particular set of circumstances is insufficient to prove that a statute is facially unconstitutional. [Citation.] The armed habitual criminal statute was enacted to help protect the public from the threat of violence that arises when repeat offenders possess firearms. *** Accordingly, we find that the potential invalidity of the armed habitual criminal statute in one very unlikely set of circumstances does not render the statute unconstitutional on its face.' " *Fulton*, 2016 IL App (1st) 141765, ¶ 23 (quoting *Johnson*, 2015 IL App (1st) 133663, ¶ 27).

¶ 30 In finding the armed habitual criminal statute constitutional, we emphasized that the statute did not overreach or criminalize wholly innocent conduct, reasoning:

"[A] twice-convicted felon's possession of a firearm is not 'wholly innocent' and is, in fact, exactly what the legislature was seeking to prevent in passing the armed habitual criminal statute. The statute's criminalization of a twice-convicted felon's possession of a weapon is, therefore, rationally related to the purpose of 'protect[ing] the public from

[2] We note that defendant did not possess a FOID card at the time he was found to be in possession of a firearm on September 25, 2013. However, given that he is raising a facial constitutional challenge, rather than an "as applied" challenge, he nonetheless has standing to make this argument on appeal because he is arguing that the statute, as written, cannot be enforced against *anyone*, including himself, even though he did not have a FOID card. See *Fulton*, 2016 IL App (1st) 141765, ¶ 19.

the threat of violence that arises when repeat offenders possess firearms.' " *Fulton*, 2016 IL App (1st) 141765, ¶ 31 (quoting *Johnson*, 2015 IL App (1st) 133663, ¶ 27).

¶ 31　　　　Defendant acknowledges our decisions in *Johnson* and *Fulton*, but urges this court not to follow those decisions. We, however, decline his invitation to deviate from our prior rulings and continue to reaffirm the constitutionality of the armed habitual criminal statute.[3]

¶ 32　　　　　　　　　　　　　　Monetary Assessments

¶ 33　　　　Finally, Defendant challenges the circuit court's order imposing various fines, fees, and costs. He argues that his statutorily granted "$5 per day pre-sentence custody credit should be applied to various assessments improperly denominated as 'fees,' because under the law, they are actually fines."

¶ 34　　　　As a threshold matter, we note that although defendant failed to challenge the propriety of his assessments in the circuit court, a reviewing court may nonetheless modify a fines and fees order without remand. See Ill. S. Ct. R. 615(b)(1); see also *People v. Brown*, 2017 IL App (1st) 142877, ¶ 70; *People v. Camacho*, 2016 IL App (1st) 140604, ¶ 45. The propriety of a fines and fees order is subject to *de novo* review. *People v. Bowen*, 2015 IL App (1st) 132046, ¶ 60; *People v. Price*, 375 Ill. App. 3d 684, 697 (2007).

¶ 35　　　　Section 110-14(a) of the Illinois Code of Criminal Procedure of 1963 provides: "Any person incarcerated on a bailable offense who does not supply bail and against whom a *fine* is levied on a conviction of such offense shall be allowed a credit of $5 for each day so incarcerated upon application of the defendant. However, in no case shall the amount so allowed or credited

---

[3]Our decisions in *Johnson* and *Fulton* also thoroughly discuss and distinguish the Illinois supreme court cases that defendant cites in his appellate brief in support of his argument that the armed habitual criminal statute is unconstitutional: *Coram v. State of Illinois*, 2013 IL 113867, *Madrigal*, 241 Ill. 2d 463, and *People v. Carpenter*, 228 Ill. 2d 250 (2008). For the sake of brevity, we need not repeat our analysis here; however, we continue to adhere to our previous analysis and find that the aforementioned cases are distinguishable from the case at bar and do not compel a different result. See *Fulton*, 2016 IL App (1st) 141765, ¶¶ 24-31 (distinguishing *Coram*, *Madrigal*, and *Carpenter*); *Johnson*, 2015 IL App (1st) 133663, ¶¶ 28-29 (distinguishing *Coram*).

exceed the amount of the *fine*." (Emphases added.) 725 ILCS 110-114(a) (West 2012). Pursuant to the plain language of the statute, a defendant's presentence incarceration credit may only be applied to fines, not fees. 725 ILCS 110-14(a) (West 2012); *People v. Johnson*, 2011 IL 111817, ¶ 8. A charge is considered a "fee" where it assessed in order to " 'recoup expenses incurred by the state,' or to compensate the state for some expenditure incurred in prosecuting the defendant." *People v. Graves*, 235 Ill. 2d 244, 250 (2009) (quoting *People v. Jones*, 223 Ill. 2d 569, 582 (2006)). A "fine," in contrast, is " ' "punitive in nature" ' and is ' "a pecuniary punishment imposed as part of a sentence on a person convicted of a criminal offense." ' " *Id*. (quoting *Jones*, 223 Ill. 2d at 581, quoting *People v. White*, 333 Ill. App. 3d 777, 781 (2002)). The label utilized by the legislature to describe the charge is not dispositive (*Jones*, 223 Ill. 3d at 583; *Brown*, 2017 IL App (1st) 142877, ¶ 73); rather, to determine the true nature of the charge, the "most important factor" to consider is "whether the charge seeks to compensate the state for any costs incurred as the result of prosecuting the defendant" (*Graves*, 235 Ill. 2d at 250). Keeping the aforementioned principles in mind, we turn to address the specific monetary assessments that defendant challenges on appeal.

¶ 36        Defendant argues, and the State concedes, that the $15 State Police Operations charge (705 ILCS 105/27.3a(1.5) (West 2012)) is a fine and is thus subject to presentence credit. We concur with the parties. As courts have previously observed, the money collected pursuant to this provision is put in a fund that is used by the Illinois Department of Police to finance "any lawful purpose" and is not used to reimburse the state for any expenses incurred in prosecuting a defendant. *People v. Maxey*, 2016 IL App (1st) 130698, ¶¶ 140-41; *People v. Millsap*, 2012 IL App (4th) 110668, ¶ 31. Therefore, this charge is a fine and is subject to offset by defendant's

presence incarceration credit. *Maxey*, 2016 IL App (1st) 130698, ¶¶ 140-41; *Millsap*, 2012 IL App (4th) 110668, ¶ 31.

¶ 37     The parties both also agree that the $50 court system fee (55 ILCS 5/5-1101(c)(1) (West 2012)), despite its nomenclature, is also a fine subject to offset by defendant's presence incarceration credit because the collected proceeds are used to "finance the court system" (55 ILCS 5/5-1101(g) (West 2012)) rather than to specifically reimburse the state for expenses incurred in prosecuting a defendant. We agree with the parties. See, *e.g.*, *Camacho*, 2016 IL App (1st) 140604, ¶ 46 (concluding that the $50 court system fee is a fine that may be offset by a defendant's presence custody credit); *People v. Blanchard*, 2015 IL App (1st) 132281, ¶ 22 (same); *People v. Smith*, 2013 IL App (2d) 120691, ¶ 21 (same). We therefore hold that defendant may apply his presence incarceration credit toward the $50 Court System Fee.

¶ 38     The parties are not in agreement with respect to the remaining monetary charges that defendant challenges on appeal. Turning next to the $2 state's attorney records automation fee (55 ILCS 5/4-2002.1(c) (West 2012)) and the $2 public defender records automation fee (55 ILCS 5/3-4012 (West 2012)), the bulk of legal authority has concluded that both assessments are fees rather than fines because they are designed to compensate those organizations for the expenses they incur in updating their automated record-keeping systems while prosecuting and defending criminal defendants. See *Brown*, 2017 IL App (1st) 142877, ¶¶ 76, 78 (concluding that both the $2 state's attorney records automation charge and the $2 public defendant records automation charge are fees rather than fines); *People v. Murphy*, 2017 IL App (1st) 142092, ¶ 22 (same); *Bowen*, 2015 IL App (1st) 132046, ¶¶ 64-65 (same); *People v. Reed*, 2016 IL App (1st) 140498, ¶¶ 16-17 (same); *cf. Camacho*, 2016 IL App (1st) 140604, ¶¶ 47-56 (categorizing both assessments as fines). We elect to follow the weight of authority and conclude that the $2 state's

attorney records automation charge and the $2 public defender records automation charge are both fees. Therefore, defendant may not apply his presentence incarceration credit to offset either charge.

¶ 39    Defendant maintains that four additional monetary assessments imposed on him are fines rather than fees and are therefore subject to offset, including: the $190 felony complaint filed (clerk) charge (705 ILCS 105/27.2a(w)(1)(A) (West 2012)); the $15 automation (clerk) charge (705 ILCS 105/27.3a(1) (West 2012)); the $15 document storage charge (705 ILCS 105/27.3c (West 2012)); and the $25 court services charge (55 ILCS 5/5-1103 (West 2012)). This court, however, has previously rejected defendant's characterization of those charges and has determined that they are fees rather than fines because they are "compensatory" and represent a "collateral consequence" of a defendant's conviction. See *People v. Tolliver*, 363 Ill. App. 3d 94, 97 (2006). Therefore, we conclude that these charges are fees that are not subject to offset by presentence incarceration credit.

¶ 40    Accordingly, we hold that the $15 state police operations charge and the $50 court system fee be offset by defendant's available presentence credit. The remaining disputed charges are not subject to offset. Pursuant to our authority under Illinois Supreme Court Rule 615(b)(1), we direct the clerk of the circuit court to correct the fines and fees order in accordance with these instructions.

¶ 41                                    CONCLUSION

¶ 42    For the reasons set forth above, we affirm defendant's armed habitual criminal conviction and correct his fines and fees order.

¶ 43    Affirmed; fines and fees order corrected.