# Illinois Official Reports

## Appellate Court

---

*People v. Braden*, 2018 IL App (1st) 152295

---

| | |
|---|---|
| Appellate Court Caption | THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. ARMON BRADEN, Defendant-Appellant. |
| District & No. | First District, First Division<br>Docket No. 1-15-2295 |
| Filed | February 26, 2018 |
| Decision Under Review | Appeal from the Circuit Court of Cook County, No. 11-CR-07904; the Hon. Martin Agran, Judge, presiding. |
| Judgment | Remanded with directions; fines and fees order modified. |
| Counsel on Appeal | Michael J. Pelletier, Patricia Mysza, and S. Emily Hartman, of State Appellate Defender's Office, of Chicago, for appellant.<br><br>Kimberly M. Foxx, State's Attorney, of Chicago (Alan J. Spellberg, Miles J. Keleher, and Douglas P. Harvath, Assistant State's Attorneys, of counsel), for the People. |
| Panel | JUSTICE MIKVA delivered the judgment of the court, with opinion.<br>Presiding Justice Pierce and Justice Simon concurred in the judgment and opinion. |

¶ 1 Armon Braden pled guilty to felony murder. His conviction was predicated on an armed robbery in which the victim died from injuries inflicted by one of Mr. Braden's codefendants. After imposing a negotiated 22-year sentence on Mr. Braden, the trial court gave insufficient admonishments as to what Mr. Braden must do to perfect an appeal, including which motion he would need to file to withdraw his plea and vacate the judgment against him. Because of that, we remand this case to the trial court for proper admonishments and, following the admonishments, to allow Mr. Braden the opportunity to file the proper postplea motions if he so chooses. We also modify the fines and fees order in Mr. Braden's case.

## I. BACKGROUND

¶ 2

¶ 3 On May 13, 2011, Mr. Braden and three codefendants were charged with multiple counts of first degree murder, home invasion, armed robbery, and aggravated kidnapping. The indictment alleged that, on or about April 12, 2011, the codefendants met at the home of the victim George Nellessen, father of codefendant Matthew Nellessen, where they bound George Nellessen to a chair, gagged him, robbed him of his wallet, and forced him to sign a check payable to his son. Mr. Braden brought a BB gun to the house that he used to threaten George Nellessen into compliance. After robbing the victim, codefendant Matthew Nellessen retrieved a baseball bat, struck his father in the head multiple times, and then stabbed him to death.

¶ 4 On November 21, 2014, Mr. Braden agreed to plead guilty to one count of first degree murder—specifically felony murder predicated on an armed robbery—in exchange for a *nolle prosequi* of the remaining counts and the State's recommendation of a 22-year prison sentence. The trial court explained to Mr. Braden the charges and his right to plead not guilty, confirming that Mr. Braden understood his rights and was voluntarily relinquishing them with his plea. The trial court explained Mr. Braden's right to a jury trial and confirmed his desire to give up that right. The trial court then warned Mr. Braden of the possible penalties for first degree murder, including a 60-year sentence with a possible extended-term penalty of 60 to 100 years, along with a potential fine and several years of mandatory supervised release. After confirming that no one had threatened or promised anything to Mr. Braden, the court asked him if he was pleading guilty of his own free will, and Mr. Braden indicated that he was. The State provided the factual basis for the plea agreement, including Mr. Braden's role in the events leading to George Nellessen's kidnapping, robbery, and death. After hearing the factual basis, the trial court found that Mr. Braden's plea was freely and voluntarily made and ordered a presentence investigation.

¶ 5 Mr. Braden was sentenced on January 30, 2015. After reviewing the presentence investigation report, the trial court assessed the relevant aggravating and mitigating factors and sentenced Mr. Braden to the agreed-upon 22 years of imprisonment, with 3 years of mandatory supervised release and day-for-day credit for the time Mr. Braden had already been incarcerated.

¶ 6 The trial court then admonished Mr. Braden as follows:

> "If you seek to challenge the sentence or any aspect of the sentencing hearing prior to taking an appeal, you must file in the trial court within 30 days of today's date a written motion asking the court to reconsider the sentence imposed or reconsider any

challenges to the sentence hearing. You must set forth all of the reasons that you're challenging [the] sentencing hearing.

If the motion to reconsider your sentence is granted, a new sentence hearing will be conducted. Anything you fail to put in your written motion will be waived for all time.

In order to preserve your right to appeal your sentence or the sentencing hearing, you must file a notice of appeal with the Clerk of the Circuit Court within 30 days of the entry of the order disposing of your motion to reconsider.

You also have a right to a transcript of the proceedings of this case. If you cannot afford to pay because you are indigent, a copy of the transcript of the proceedings, as well as the services of an attorney will be provided to you free of charge.

Do you understand your appeal rights, sir?"

Mr. Braden indicated that he understood the trial court's admonishments, and his counsel confirmed with the trial court that Mr. Braden had served 1386 days in custody since his arrest, for which he would receive credit.

¶ 7 The trial court also signed an order assessing fines, fees, and costs, including a $5 electronic citation fee and a $250 DNA ID system fee, a $5 state police operations fee, a $25 court services (sheriff) fee, a $15 automation fee, a $15 document storage fee, a $2 public defender records automation fee, and a $2 state's attorney records automation fee.

¶ 8 On February 25, 2015, Mr. Braden filed a "Motion to Vacate Plea of Guilty," with an accompanying certificate. In the motion, he stated that he pled guilty to murder, that he was sentenced to be incarcerated for 22 years, that his plea ought to be vacated because "the defendant's plea was involuntary because he was coerced," and that he was indigent and desired the trial court to appoint counsel to represent him in the presentation of his motion. The motion includes the signature of the assistant public defender who had represented Mr. Braden throughout the proceedings in the trial court, Caroline Glennon, with the notation "for Δ" next to her signature. Below the signature is an unsigned affidavit of Mr. Braden. The motion has the date stamp of the clerk of the court.

¶ 9 The next page of the record is labeled "Rule 604(d) Certificate of Defense Counsel." It is unsigned and also has the February 25, 2015, date stamp of the clerk of the court. The certificate states as follows:

"1. That I was the attorney of record for the defendant.

2. That I have consulted with Armon Braden, in person, by phone or via mail to ascertain his contentions of error in the entry of the guilty plea or in the sentence.

3. That pursuant to those consultations, I, in good faith prepared the attached motion to vacate the guilty plea after having examined the court file.

4. That a transcript of plea proceedings has been examined.

5. I have made any amendments to the motion necessary for adequate presentation of any defects in said proceedings."

Below the blank signature line is typed "Assistant Public Defender." As the State notes, the motion to vacate the guilty plea, the affidavit, and the certificate all appear to be in the same typeface and they were clearly all filed on the same day.

¶ 10 The record contains no written motion to withdraw Mr. Braden's postplea motion to vacate his guilty plea. The record does, however, include an order, dated March 17, 2015, and signed

by the trial judge, that indicates it was prepared by Ms. Glennon. That order says: "Defense counsel for Armon Braden formally withdraws defendant's motion to vacate his plea filed on 2-25-15. Mr. Braden has conferred with his defense attorneys and no longer wishes to proceed on his motion to withdraw guilty plea." There is no indication that Mr. Braden was present for entry of that order, and there is no transcript from any proceedings on that date.

¶ 11    On August 20, 2015, Mr. Braden filed a *pro se* "Late Notice of Appeal," which we treated as a motion to file a late notice of appeal and allowed. That *pro se* notice marked the "Date of Judgment" as "January 30, 2015," the date of Mr. Braden's sentencing. On December 12, 2016, appointed appellate counsel sought to amend the late notice of appeal to reflect the judgment date of "March 17, 2015," which was the date the trial court ordered Mr. Braden's postplea motion withdrawn. We granted the motion to amend the notice of appeal.

¶ 12                                    II. JURISDICTION

¶ 13    Under Illinois Supreme Court Rule 606(c) (eff. Feb. 6, 2013), we have the authority to allow a late notice of appeal, based upon a motion filed at any time within the six months following the original notice of appeal deadline. We have jurisdiction over Mr. Braden's challenge to the trial court's January 30, 2015, sentencing order because Mr. Braden's *pro se* August 20, 2015, notice, which we treated as a motion for leave to file a late notice of appeal, was filed within six months of the 30-day deadline to appeal his sentence. The timely filing of a notice of appeal is the only jurisdictional step required to initiate appellate review. *People v. Lewis*, 234 Ill. 2d 32, 37 (2009).

¶ 14    As noted above, the amended notice of appeal states that this is an appeal from the judgment order of March 17, 2015. That was the order that allowed Mr. Braden's purported motion to withdraw his motion to vacate his guilty plea. The late notice of appeal was also filed within the six-month deadline for appealing that order.

¶ 15    The State argues that we lack jurisdiction over the March 17, 2015, order because it is not final and appealable. However, as Mr. Braden points out, the January 30, 2015, sentencing order could not be appealed while the motion to vacate the guilty plea was pending. Thus, the January 30, 2015, sentencing order actually became appealable on March 17, 2015, when the motion to vacate the guilty plea was no longer pending. For that reason, it was appropriate for Mr. Braden to amend the notice of appeal.

¶ 16    Because we do not reach the issue of whether the trial court erred in allowing Mr. Braden to withdraw his motion to vacate his guilty plea, for the reasons we discuss below, we need not consider the State's argument that we lack jurisdiction to rule on that issue.

¶ 17                                    III. ANALYSIS

¶ 18    Mr. Braden asks us to remand his case to the trial court with the opportunity to file new postplea motions on the grounds that (a) the trial court failed to give him the proper Illinois Supreme Court Rule 605(c) (eff. Oct. 1, 2001) admonishments regarding withdrawal of his guilty plea, (b) his defense counsel failed to comply with Illinois Supreme Court Rule 604(d) (eff. Feb. 6, 2013) in the certificate accompanying his motion to withdraw his guilty plea, and (c) the trial court abused its discretion or denied him due process by entering its order allowing withdrawal of his Rule 604(d) motion when Mr. Braden was not present in court. He also

argues that certain fines and fees were erroneously assessed against him or should be offset by his presentence incarceration credit.

¶ 19       We agree with Mr. Braden that the trial court failed to give him the appropriate admonishments. Although Mr. Braden filed a timely motion to vacate that plea, he then appears to have withdrawn that motion. This leaves us unpersuaded that Mr. Braden suffered no prejudice from the deficiency in the admonishments. We therefore remand this case to the trial court for proper admonishments and an opportunity for Mr. Braden to file postplea motions if he so desires. This effectively resolves the first three issues raised by Mr. Braden and eliminates any need to address Mr. Braden's claims that the this case should be remanded because of an improper Rule 604(d) certificate and that the trial court erred in allowing his counsel to withdraw his motion to vacate his guilty plea without him present. We also direct the clerk of the court to correct the order assessing fines and fees.

¶ 20                    A. This Case Must Be Remanded for Proper Rule 605(c) Admonishments

¶ 21       Illinois Supreme Court Rules 604 and 605 address guilty pleas and are "meant to mesh together not only to ensure that defendants' constitutional rights are protected, but also to avoid abuses by defendants." *People v. Wilk*, 124 Ill. 2d 93, 103 (1988). Rule 604(d) requires that a defendant bring any claim of error regarding a guilty plea or sentence first to the trial court. *People v. Foster*, 171 Ill. 2d 469, 471 (1996). That rule provides in relevant part as follows:

> "No appeal from a judgment entered upon a plea of guilty shall be taken unless the defendant, within 30 days of the date on which sentence is imposed, files in the trial court a motion to reconsider the sentence, if only the sentence is being challenged, or, if the plea is being challenged, a motion to withdraw the plea of guilty and vacate the judgment." Ill. S. Ct. R. 604(d) (eff. Feb. 6, 2013).

¶ 22       The purpose of Rule 604(d) is "to ensure that before a criminal appeal can be taken from a guilty plea, the trial judge who accepted the plea and imposed sentence be given the opportunity to hear the allegations of improprieties that took place outside the official proceedings." *Wilk*, 124 Ill. 2d at 104. Although "discovery that a defendant has failed to file a timely Rule 604(d) motion in the circuit court does not deprive [us] of jurisdiction" over the appeal, it precludes us from considering the appeal on the merits. *People v. Flowers*, 208 Ill. 2d 291, 301 (2003). Where a defendant has failed to file a motion to withdraw his guilty plea, we must dismiss the appeal. *Id.*

¶ 23       Rule 604(d) presumes, however, that a defendant was sufficiently admonished of the steps needed to perfect his appeal. "Dismissal of an appeal based on a defendant's failure to file the requisite motions in the trial court would violate due process if the defendant did not know that filing such motions was necessary." *Id.*

¶ 24       Rule 605(c) stipulates the points on which the trial court must admonish a defendant after entering a negotiated guilty plea:

> "In all cases in which a judgment is entered upon a negotiated plea of guilty, at the time of imposing sentence, the trial court shall advise the defendant substantially as follows:
>> (1) that the defendant has a right to appeal;
>> (2) that prior to taking an appeal the defendant must file in the trial court, within 30 days of the date on which sentence is imposed, a written motion asking to have the

judgment vacated and for leave to withdraw the plea of guilty, setting forth the grounds for the motion;

(3) that if the motion is allowed, the plea of guilty, sentence and judgment will be vacated and a trial date will be set on the charges to which the plea of guilty was made;

(4) that upon the request of the State any charges that may have been dismissed as a part of a plea agreement will be reinstated and will also be set for trial;

(5) that if the defendant is indigent, a copy of the transcript of the proceedings at the time of the defendant's plea of guilty and sentence will be provided without cost to the defendant and counsel will be appointed to assist the defendant with the preparation of the motions; and

(6) that in any appeal taken from the judgment on the plea of guilty any issue or claim of error not raised in the motion to vacate the judgment and to withdraw the plea of guilty shall be deemed waived.

For the purposes of this rule, a negotiated plea is one in which the prosecution has bound itself to recommend a specific sentence, or a specific range of sentence, or where the prosecution has made concessions relating to the sentence to be imposed and not merely to the charge or charges then pending." Ill. S. Ct. R. 605(c) (eff. Oct. 1, 2001). Mr. Braden and the State agree that his guilty plea in exchange for the State's recommendation of a 22-year sentence is a "negotiated plea," as defined by Rule 605(c).

As the term "substantially" in Rule 605(c) suggests, the trial court "need not use the exact language of the rule," but "must not leave out or misrepresent any of the rule's *substance*." (Emphasis in original.) *People v. Anderson*, 309 Ill. App. 3d 417, 421 (1999); *People v. Dominguez*, 2012 IL 111336, ¶ 22. "If the trial court fails to give the admonishments set forth in Rule 605 and the defendant subsequently attempts to appeal without first filing the motions required by Rule 604(d), the appeal is not dismissed." *Flowers*, 208 Ill. 2d at 301. Instead, the appropriate course is to remand the cause to the trial court for proper admonishments. *Dominguez*, 2012 IL 111336, ¶ 11. Whether the trial court complied with Rule 605(c) is an issue we review *de novo*. *Id.* ¶ 13.

Mr. Braden argues the trial court's admonishments in this case were insufficient because, although the court thoroughly described the steps needed for Mr. Braden to "challenge the sentence or any aspect of the sentencing hearing prior to taking an appeal," it failed to admonish him regarding the steps necessary to withdraw his guilty plea or to vacate the judgment imposed on Mr. Braden in the event that he challenged his guilty plea on appeal.

The State's first response is that remand is unnecessary because the trial court's admonishments "substantially complied with Rule 605(c)," in that "they conveyed the substance of the rule and put defendant on notice of the procedural steps required to challenge his guilty plea and perfect his appeal." The State relies on *Dominguez*, 2012 IL 111336, ¶¶ 5, 54, in which our supreme court affirmed a defendant's conviction on a guilty plea even though the trial court's Rule 605(c) admonishments did not repeat the rule verbatim.

But the admonishments in *Dominguez*, unlike those given by the trial court in this case, included warnings that the defendant had the " 'right to return to the courtroom within 30 days to file motions to vacate [his] plea of guilty and/or reconsider [his] sentence' "; notice that the " 'motions must be in writing and contain all the reasons to support them' " and that " '[a]ny reasons not contained therein will not be preserved for purposes of appeal' "; a warning that

" '[s]hould [the defendant's] motion to vacate [his] plea of guilty be granted, [his] plea of guilty and the judgment *** entered thereon [would] be vacated, meaning erased' " and that the " 'case [would] be set back down on the trial calendar for further proceedings' "; and an admonishment that if the defendant wished to file a notice of appeal after denial of his motions and could not afford an attorney, he would be provided " 'an attorney free of charge, along with the transcripts necessary for those purposes.' " *Id.* ¶ 5. In addition, the defendant in *Dominguez* was provided a "written form signed by defendant acknowledging he understood the Rule 605 admonishments, which did track the actual language of the rule." *Id.* ¶ 43. After determining that "strict" compliance with Rule 605(c) (*i.e.*, a verbatim reading) was unnecessary, so long as the trial court conveyed the "substance" of the rule, our supreme court found that the oral admonishments given in that case, combined with the verbatim written rule signed by the defendant, amounted to substantial compliance with Rule 605(c). *Id.* ¶¶ 22, 37-54.

¶ 29     There was no similar "substantial compliance" here. When the trial court handed down Mr. Braden's sentence, it admonished him only of the steps needed to appeal his sentence or sentencing hearing. It did not, either orally or in writing, tell him what he needed to do to challenge his guilty plea. This is quite different than what occurred in *Dominguez.* See *id.* ¶ 54. Rather, we think this case is more analogous to *People v. Perry*, 2014 IL App (1st) 122584, ¶¶ 16-17, in which we remanded the cause because the trial court's admonishments to the defendant failed to address several of the six listed points in Rule 605(c) and further found that "the admonishments were *** at times unclear." As with the defendant in *Perry*, Mr. Braden was not provided the substance of the rule's warnings and remand is therefore necessary to allow the trial court to comply with Rule 605(c). *Dominguez*, 2012 IL 111336, ¶ 11.

¶ 30     The State's other argument is that, even if the admonishments were deficient, Mr. Braden "suffered no prejudice because he nevertheless filed a timely motion." While a timely motion to vacate a guilty plea could certainly moot the concern about the improper admonishments, in this case Mr. Braden's Rule 604(d) motion was later withdrawn. While Mr. Braden, like any other defendant, was certainly free to withdraw a motion, the circumstances surrounding the withdrawal of Mr. Braden's motion to vacate his guilty plea in this case leave us far from assured that he suffered no prejudice from the trial court's deficient Rule 605(c) admonishments.

¶ 31     The order "allowing" Mr. Braden to withdraw his motion to vacate his guilty plea was entered at a proceeding at which he was not present. There is no transcript from that court date, but since he was not present, it is clear that he was not warned on that court date that by withdrawing the motion to vacate his plea he was closing the door to any appellate challenge to his plea deal. Just as there could be a causal link between deficient admonishments and the failure to file a motion to vacate the plea, there is an obvious potential for a causal link between the deficient Rule 605(c) admonishments and Mr. Braden's later withdrawing the motion that needed to be on file if he wanted to appeal his guilty plea.

¶ 32     There are several circumstances specific to this case that further undermine the State's "no prejudice" argument. First, there was no written motion to withdraw the motion to vacate the guilty plea filed. The only record revealing that his Rule 604(d) motion was withdrawn comes from a trial court order, which reads only that "Defense counsel for Armon Braden formally withdraws defendant Braden's motion to vacate his plea filed on 2-25-15. Mr. Braden has conferred with his defense attorneys and no longer wishes to proceed on his motion to

withdraw guilty plea." The State emphasizes that the order appears to have been prepared by Ms. Glennon—Mr. Braden's appointed counsel when he pled guilty—implying that Mr. Braden had communicated with Ms. Glennon. We have no assurance however, based on this record, that Mr. Braden was notified that his counsel would be filing this motion to withdraw the motion to vacate his guilty plea and certainly no understanding as to what Mr. Braden was told about the consequences of filing a motion to withdraw the motion to vacate the plea. Moreover, as we noted in the facts, Mr. Braden was not in court on March 17, 2015, when the order was entered, and there is no transcript from that date in the record. Finally, the record does not even contain a court order reappointing Ms. Glennon to represent Mr. Braden on his postplea motion, so it is unclear whether any attorney had authority to act on his behalf.

¶ 33 Second, Mr. Braden's motion to vacate his plea was accompanied by an unsigned attorney certificate that purported to accord with Rule 604(d) but did not. This deficient certificate further illustrates the absence of any clarity in this record that Mr. Braden acted with the advice of counsel or with a full understanding of the need to preserve his objections to his guilty plea in the trial court.

¶ 34 The text of Rule 604(d), provided, at the time of Mr. Braden's motion to vacate his guilty plea, in relevant part as follows:

> "The motion shall be in writing and shall state the grounds therefor. When the motion is based on facts that do not appear of record it shall be supported by affidavit. *** The trial court shall then determine whether the defendant is represented by counsel, and if the defendant is indigent and desires counsel, the trial court shall appoint counsel. *** The defendant's attorney shall file with the trial court a certificate stating that the attorney has consulted with the defendant either by mail or in person to ascertain defendant's contentions of error in the sentence or the entry of the plea of guilty, has examined the trial court file and report of proceedings of the plea of guilty, and has made any amendments to the motion necessary for adequate presentation of any defects in those proceedings." Ill. S. Ct. R. 604(d) (eff. Feb. 6, 2013).

¶ 35 Mr. Braden's Rule 604(d) certificate was not signed by any attorney, although it had a signature line for an attorney. The motion to vacate the guilty plea did not include any support by affidavit or certificate for Mr. Braden's claim that his plea was coerced, as Rule 604(d) requires.

¶ 36 The record is unclear as to who exactly authored the Rule 604(d) motion and certificate, filed together on February 25, 2015. The State suggests that the motion and certificate were both filed together *pro se* and, although the motion bears counsel's signature, she simply filed the papers as a courtesy to Mr. Braden. We agree with the State that this is what appears to have occurred. But this sequence of events only further undermines the State's "no prejudice" argument.

¶ 37 As the State recognizes, Rule 604(d) conceives of a process in which a defendant—frequently *pro se*—prepares a motion to withdraw a guilty plea and vacate the judgment against him. When, as in this case, the defendant requests counsel, counsel is then appointed if the defendant is indigent. *Id.* The defendant's attorney *then* files a certificate stating that she and the defendant have consulted regarding any alleged errors in the sentencing or guilty plea, and the attorney amends the motion as needed "for adequate presentation of any defects in those proceedings." *Id.* This certificate was filed *with*, rather than *after*, the motion and contains nothing to suggest that Mr. Braden consulted with counsel since it does not even

bear an attorney's signature. The attorney's role in this case, from what we can discern from the record, may have been limited to filing Mr. Braden's *pro se* motion on his behalf.

¶ 38 Ultimately, we are not confident that Mr. Braden was made aware of the procedural steps needed to challenge his guilty plea, which he maintained was the product of coercion. His filing of a timely motion with an incongruous unsigned certificate attached, which was later withdrawn outside of Mr. Braden's presence and without a written motion to withdraw the motion to vacate, provides us with no assurance that Mr. Braden understood the need for that motion to perfect his appeal. Because the admonishments that Mr. Braden received did not satisfy Rule 605(c), we remand the cause to the trial court for compliance with that rule, and to give Mr. Braden an opportunity to file postplea motions, after he is properly admonished.

¶ 39 This remand renders moot any separate argument that Mr. Braden makes about his entitlement to relief because the Rule 604(d) certificate was deficient or should have been drafted in accordance with the newer 2017 version of the rule. The remand also renders moot Mr. Braden's claim that he was denied due process by the court's entering an order allowing him to withdraw his motion to vacate the guilty plea without him being present. As noted above, this also moots the State's jurisdictional argument as to the March 17, 2015, order. In remanding for proper admonishments, Mr. Braden will have an opportunity to file new postplea motions, fully apprised of his obligations to do so.

¶ 40 B. Fines and Fees

¶ 41 1. The Electronic Citation and DNA Fees

¶ 42 Mr. Braden asks us to direct the clerk of the circuit court to vacate the electronic citation fee and the DNA fee levied upon him. Mr. Braden acknowledges that "defense counsel did not object to the imposition of [the electronic citation and DNA] fees, or include them in a post-trial motion." However, the State does not argue Mr. Braden forfeited this issue and instead concedes that the two fees were improperly assessed and should be vacated. In particular, the parties agree that we ought to vacate the $5 electronic citation fee (see 705 ILCS 105/27.3e (West 2014)) because that fee does not apply to felony convictions. *People v. Moore*, 2014 IL App (1st) 112592, ¶ 46. In addition, they agree that the $250 DNA fee (see 730 ILCS 5/5-4-3(j) (West 2014)) was improper because Mr. Braden has a prior felony conviction for robbery. When a defendant has a prior felony conviction and was already registered in the DNA database before this case, imposition of the DNA fee is improper. *People v. Marshall*, 242 Ill. 2d 285, 303 (2001). We agree and vacate the imposition of those fees.

¶ 43 2. The Assessments Not Offset by Presentence Incarceration Credit

¶ 44 Mr. Braden also asks us to offset certain assessments he alleges were improperly imposed as "fees" when they were actually "fines" subject to offset by presentence incarceration credit. "Any person incarcerated on a bailable offense who does not supply bail and against whom a fine is levied on conviction of such offense shall be allowed a credit of $5 for each day so incarcerated upon application of the defendant." 725 ILCS 5/110-14(a) (West 2014). The parties do not dispute that Mr. Braden served 1386 days in custody, which amounts to $6930 in credit available to offset fines levied against him. See *People v. Jones*, 223 Ill. 2d 569, 580 (2006).

¶ 45     The credit operates to offset only fines, not fees, thus "whether defendant was entitled to the credit against any charge imposed on him turns solely on whether that charge constituted a 'fine' or a 'fee.' " *Id.* Our supreme court differentiated the two in that, "[b]roadly speaking, a 'fine' is a part of the punishment for a conviction, whereas a 'fee' or 'cost' seeks to recoup expenses incurred by the state—to compensate the state for some expenditure incurred in prosecuting the defendant." (Internal quotation marks omitted.) *Id.* at 582. Under *Jones*, " 'the *central* characteristic which separates a fee from a fine' " is "whether the charge seeks to compensate the state for any costs incurred as the result of prosecuting the defendant." (Emphasis in original.) *People v. Graves*, 235 Ill. 2d 244, 250 (2009).

¶ 46     Mr. Braden argues that four of the assessments imposed that were labeled as "fees" are actually "fines": (1) the $15 state police operations fee, (2) the $25 court services (sheriff) fee, (3) the $15 automation fee and the $15 document storage fee, and (4) the $2 public defender records automation fee and the $2 state's attorney records automation fee. The State concedes that the first assessment—the $15 state police operations fee—was improperly categorized as a fee, as previous courts have determined it is actually a fine. See *People v. Millsap*, 2012 IL App (4th) 110668, ¶ 31 (finding that, under the statute establishing the state police operations fee, the money in question was to be used by the Illinois Department of State Police to "finance any of its lawful purposes or functions" and does not reimburse for the costs incurred in prosecuting defendant's case (internal quotation marks omitted)). We agree with the parties and direct the clerk of the circuit court to offset this assessment with presentence incarceration credit. We now turn to the remaining three assessments.

¶ 47     Mr. Braden argues that the $25 court services (sheriff) fee is actually a fine because its stated purpose in the statute is to "defray[ ] court security expenses incurred by the sheriff in providing court services or for any other court services deemed necessary by the sheriff to provide for court security." 55 ILCS 5/5-1103 (West 2014). He argues this assessment does not directly compensate the State for the cost of prosecuting him, as the holding in *Jones*, 223 Ill. 2d at 582, mandates. The State responds by relying on *People v. Brown*, 2017 IL App (1st) 150146, and *People v. Tolliver*, 363 Ill. App. 3d 94, 97 (2006), in which we held that this court services assessment was "compensatory in nature" and a "collateral consequence" of a defendant's conviction, thus properly assessed as a fee not subject to offset.

¶ 48     We agree with the State and find that the court services (sheriff) assessment was properly categorized as a "fee" because the services for which the legislature allowed reimbursement are specifically tied to the prosecution of a criminal court case, namely the need for sheriff's deputies to maintain court security throughout the proceedings. Rather than flowing to a general fund to finance "any lawful purposes," as with the state police operations assessment, it is meant to compensate for costs incurred as the result of a particular criminal prosecution. See *Graves*, 235 Ill. 2d at 250. The $25 court services (sheriff) fee thus cannot be offset by presentence incarceration credit.

¶ 49     The parties make similar arguments for the $15 automation fee (705 ILCS 105/27.3a(1) (West 2014)) and the $15 document storage fee (*id.* § 27.3c). Mr. Braden asks us not to follow *Tolliver*, 363 Ill. App. 3d 94, and to instead rely on *People v. Smith*, 2013 IL App (2d) 120691, which he insists is a recent case that "considered whether a similar charge was a fine or a fee," and ruled for the defendant. However, the *Smith* court addressed a different, although similar fee, whereas *Tolliver* addressed the automation fee disputed here. Furthermore, we recently held in *Brown*, 2017 IL App (1st) 150146, ¶ 39, that the $15 automation and $15 document

storage assessments were " 'collateral consequence[s]' " to a defendant's convictions and thus were not subject to offset. We agree with the characterization of these two assessments as fees not subject to offset.

¶ 50 Finally, Mr. Braden challenges the characterization of the $2 public defender records automation assessment (55 ILCS 5/3-4012 (West 2014)) and the $2 state's attorney records automation assessment (*id.* § 4-2002.1(c)) as fees. He relies on *People v. Camacho*, 2016 IL App (1st) 140604, ¶ 56, in which a division of this court found these assessments to be fines. But the *Camacho* court also recognized, "every [other] published decision on this matter has determined that both the State's Attorney and public defender records automation assessments are fees." *Id.* ¶ 52 (citing *People v. Maxey*, 2016 IL App (1st) 130698, ¶¶ 142-44, *vacated*, No. 121137 (Ill. Nov. 22, 2017), *People v. Reed*, 2016 IL App (1st) 140498, ¶¶ 16-17, *People v. Green*, 2016 IL App (1st) 134011, ¶ 46, *People v. Bowen*, 2015 IL App (1st) 132046, ¶¶ 62-65, *People v. Bradford*, 2014 IL App (4th) 130288, ¶ 41, *rev'd on other grounds*, 2016 IL 118674, and *People v. Rogers*, 2014 IL App (4th) 121088, ¶ 30).

¶ 51 We agree with the bulk of authority that these assessments are properly categorized as fees because they are not intended to punish the defendant but, rather, "are designed to compensate those organizations for the expenses they incur in updating their automated record-keeping systems while prosecuting and defending criminal defendants." *Brown*, 2017 IL App (1st) 150146, ¶ 38. Accordingly, these assessments may not be offset by presentence incarceration credit.

¶ 52                              IV. CONCLUSION

¶ 53 For the above reasons, we remand to the trial court for compliance with Rule 605(c) and to allow Mr. Braden a chance to file postplea motions under Rule 604(d). Fines and fees assessed to Mr. Braden are to be modified consistent with this opinion. Specifically, we direct the clerk of the circuit court to vacate the imposition of the $5 electronic citation and the $250 DNA assessments, and to modify by offsetting the $15 state police operations assessment levied against him with presentence incarceration credit. The total amount that he owes, with his credit, should be reflected as $379.

¶ 54 Remanded with directions; fines and fees order modified.