2016 IL App (1st) 134011

FIRST DIVISION
March 7, 2016


No. 1-13-4011

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) | Appeal from the |
| | ) | Circuit Court of |
| Plaintiff-Appellee, | ) | Cook County |
| | ) | |
| v. | ) | No. 11 CR 12175 |
| | ) | |
| LESTER GREEN, | ) | Honorable |
| | ) | Rosemary Grant Higgins, |
| Defendant-Appellant. | ) | Judge Presiding. |

JUSTICE HARRIS delivered the judgment of the court, with opinion.
Presiding Justice Liu and Justice Cunningham concurred in the judgment and opinion.


**OPINION**

¶ 1    The circuit court sentenced defendant Lester Green to 30 years' imprisonment after a jury convicted him of one count of aggravated battery with a firearm and unlawful use of a weapon by a felon.  On the night of the alleged incident Defendant approached the victim outside a bar on the west side of Chicago.   Defendant greeted the female who was with the victim and then attempted to shake hands with the victim.   The victim rebuffed Defendant's handshake. Defendant returned to his vehicle, appeared to search under the seat for something and then departed.   A short time later, Defendant returned and again approached the victim and the woman.  Defendant approached the two with his hands in his pockets and after coming within a foot or two of the victim asked to speak with him.  The victim told the Defendant he did not wish to speak with him.   Defendant then fired a gun concealed in his front pant pocket.   The

Defendant removed the firearm from his pocket and shot at the victim again. Neither of these first two shots hit the victim. A struggle ensued and the firearm discharged again, striking the victim in the leg.

¶ 2     At trial, Defendant requested an instruction regarding reckless conduct, which the trial court denied. Following trial, Defendant filed a *pro se* motion raising numerous claims for ineffective assistance of counsel. The trial court conducted a first stage *Krankel* inquiry to determine if new counsel was necessary. *People v. Krankel*, 102 Ill. 2d 181 (1984). At the hearing, Defendant's public defender was put under oath and questioned by the assistant State's Attorney. Furthermore, the trial court also allowed the assistant State's Attorney to present arguments against granting the motion. After allowing the State to argue, the court denied Defendant's motion. This appeal followed.

¶ 3     Before this court, Defendant raises the following issues: (1) whether the trial court erred when it refused to instruct the jury on the offense of reckless conduct; (2) whether the trial court conducted an improper and adversarial preliminary *Krankel* hearing; (3) whether this court should order Defendant's mittimus corrected to reflect that the trial judge merged Defendant's conviction for unlawful use of a firearm by a felon into his conviction for aggravated battery with a firearm; and (4) whether this court should order the Defendant's fines, fees, and costs order corrected. We hold that the trial court did not err when it refused to give the reckless conduct instruction. We order that the Defendant's mittimus be corrected to reflect the merger of Defendant's conviction for unlawful use of a firearm by felon into his conviction for aggravated battery with a firearm. We order that the Defendant's fines, fees, and costs order be corrected as stated below. Finally, we remand these proceedings for a new *Krankel* hearing.

¶ 4                                    JURISDICTION

¶ 5    The trial court sentenced Defendant on December 5, 2013.  Notice of appeal was timely filed the same day.  Accordingly, this court has jurisdiction pursuant to article VI, section 6, of the Illinois Constitution and Illinois Supreme Court Rules 603 and 606, governing appeals from a final judgment of conviction in a criminal case entered below.   Ill. Const. 1970, art. VI, § 6; Ill. S. Ct. Rs. 603, 606 (eff. Feb. 6, 2013).

¶ 6                                    BACKGROUND

¶ 7    Defendant, Lester Green, was charged with attempted first degree murder, aggravated battery with a firearm, aggravated discharge of a firearm, aggravated unlawful use of a weapon and unlawful use of a weapon by a felon.  The State nol-prossed count I (attempted first degree murder) and proceeded on count III (attempted first degree murder), count VI (aggravated battery with a firearm) and count XII (unlawful use of a weapon by a felon).  Following a jury trial, Defendant was found guilty of aggravated battery with a firearm and unlawful use of a weapon by a felon and not guilty of attempted first degree murder.

¶ 8    On the evening of July 18, 2011, just before 10 p.m., Corey Brown (Brown) was at Brown Sugar Sport's Bar (the Bar) on the west side of Chicago when he met Diana Stewart (Stewart), a woman he previously did not know.  Brown and Stewart had a long conversation that took place both inside and outside of the Bar.  Brown and Stewart were outside talking around 11 p.m. when a vehicle pulled up alongside of them.  The driver exited the vehicle and approached Brown and Stewart.  Brown identified Defendant in-court as the individual that approached.  Defendant spoke to Stewart and extended his hand to Brown as if he wanted to say hello.  Brown did not shake Defendant's hand because "his approach was so strong" and Defendant acted as if Stewart was his girlfriend.  Defendant seemed irritated and offended that

Brown did not shake his hand. Defendant went back to his vehicle, appeared to reach for something under his seat, and then drove away.

¶ 9 Brown and Stewart continued talking outside. While Brown and Stewart were standing in front of the Bar door, Brown noticed Defendant walking towards him and Stewart. Defendant had both hands inside his pockets. Defendant was within one or two feet of Brown when he asked Brown if he could have a word. However, Brown did not wish to talk to Defendant. Then, Defendant pointed his hand that was in his front pant pocket and fired a shot through the pocket. When he heard the gunshot, Brown, who was unarmed, pushed Stewart and another woman into the Bar for protection and attempted to get inside as well. Brown attempted to close the door behind him, but Defendant prevented Brown from completely closing the door. Defendant came up to Brown, pointed a gun at him, and fired a second shot.

¶ 10 Brown testified that although he may have told the police shortly after the shooting that Defendant started to walk away from the Bar after the second shot was fired, Defendant had in fact not walked away from the Bar. Brown further stated that he did not follow Defendant outside nor did he grab Defendant from behind. Rather, Brown attempted to get the gun away from the Defendant. Brown hit Defendant with his fists. During the struggle for the gun, Defendant bit into Brown's forearm and shot Brown in the left thigh. Brown managed to put his finger in the trigger so Defendant could not pull the trigger and shoot at him again. Brown repeatedly hit Defendant during the struggle, causing Defendant to fall to the ground unconscious. When the police arrived, Defendant was still unconscious.

¶ 11 Stewart testified consistently with Brown. Stewart made an in-court identification of Defendant as the man that approached her and Brown outside of the Bar. When Defendant approached, Defendant referred to Stewart as his little sister. Stewart was not Defendant's little

sister but did live in the same building as Defendant. Defendant then inquired if Stewart was okay, and she responded positively. Then, Defendant went to shake Brown's hand, but Brown did not want to shake hands with Defendant. According to Stewart, Defendant looked uneasy and left.

¶ 12    Stewart and Brown continued to talk outside of the Bar for awhile. When Stewart and Brown were on the way back into the Bar and were nearing the door, Defendant walked up and asked to speak with Brown. Brown told Defendant he did not want to talk. Stewart's back was turned when she heard a gunshot. Stewart did not see who fired the gun and had not seen either Brown or Defendant with a gun that night. Stewart felt someone push her into the Bar and close the door. Stewart ran into the bathroom and was there when she heard two more guns shots.

¶ 13    On July 18, 2011 just before midnight, Chicago police officer Gramarosso and his partner, Officer Riles, received, a call of a person shot at Brown Sugar Sport's Bar. Upon their arrival, the officers secured the scene. Officer Gramarosso found a semiautomatic handgun that was missing its magazine in a vacant lot next to the Bar. Officer Gramarosso also found a white towel with red liquid on it near the gun. The gun was photographed and inventoried.

¶ 14    Chicago police officer Ramirez and his partner, Officer Ortiz, received a call of a person shot at Washtenaw and Madison Streets. The officers relocated to the scene and an ambulance was already there. Officer Ortiz rode in the ambulance with Defendant to Mount Sinai Hospital and Officer Ramirez followed behind in the squad car. Defendant was conscious when Officer Ramirez was with him in the hospital. Officer Ramirez was present in the hospital when Defendant's clothing was removed. He observed the nurse place Defendant's clothes in a clear plastic, patient bag. He observed a shell casing fall from Defendant's clothing. Officer Ramirez

also noticed a hole in Defendant's pants near the right hand pocket. Officer Ramirez also observed Brown at the hospital and noted that he had a gunshot wound and a bite mark.

¶ 15    Forensic testing on Defendant's pants detected the presence of gunshot residue. The front right and left pockets of Defendant's pants tested positive for gunshot residue. The forensic expert concluded that the right and left pockets either came into contact with a primer gunshot residue related item or was in close proximity to a firearm when it was discharged.

¶ 16    The parties stipulated that Dr. Thomas Widell would state that he treated Brown at Mount Sinai Hospital for a through and through gunshot wound to the left thigh. The parties stipulated that an evidence technician processed the crime scene and inventoried a .380-auto caliber fired cartridge, a magazine containing five live rounds from a .380-automatic and a Hi-Point Model CF .380-auto caliber semiautomatic pistol without a magazine. The evidence technician also inventoried Defendant's clothing and Brown's shorts, and noted that Brown's shorts contained a hole.

¶ 17    The parties also stipulated to the testimony of the firearms expert. The parties stipulated that the expert performed tests on the two fired cartridge cases and a .380-auto caliber semiautomatic pistol. The expert found both shell casings were fired from the same firearm, the semiautomatic that was recovered from the crime scene. The parties also stipulated that Defendant was previously convicted of a felony offense.

¶ 18    Chicago police detective Ed Heerdt was called to testify by the Defendant. He testified that when he arrived at the scene neither Defendant nor Brown were still present and the physical evidence had been collected by the evidence technician. Detective Heerdt then went to Mount Sinai Hospital and spoke with Brown. Brown told Detective Heerdt that he pushed Stewart back into the Bar for her protection and shut the door behind himself. Detective Heerdt stated that

Brown also told him that he opened the Bar door, exited and grabbed defendant from behind and began struggling with defendant in an attempt to control, disarm, and contain him.

¶ 19    During the jury instruction conference, the assistant public defender representing Defendant asked for an instruction on the lesser-included offense of reckless conduct as to the charges of attempted murder and aggravated battery. After brief exchange between the judge, the public defender, and the assistant State's Attorney, the judge found there was insufficient evidence to support an instruction concerning the offense of recklessness.

¶ 20    The jury found defendant guilty of aggravated battery with a firearm, guilty of unlawful possession of a weapon by a felon and not guilty of attempted first degree murder. The trial judge entered judgment on the verdicts.

¶ 21    On the date the case was up for post trial motions and sentencing, Defendant's public defender indicated that Defendant wanted to proceed *pro se*. Defendant acknowledged the same and provided a written memo. Defendant indicated that he was alleging ineffective assistance of counsel. The trial court granted Defendant leave to amend his motion to add ineffective assistance of counsel claims.

¶ 22    The case was continued for several months before the court conducted the preliminary *Krankel* inquiry. The inquiry was based on Defendant's motion alleging his defense counsel, was ineffective for (1) advising Defendant to agree to the stipulations for medical personnel and the forensic expert; (2) not following his request to have the firearm fingerprinted; (3) refusing his request for forensic testing to prove that the hole in his pocket was not made from the discharge of the firearm; (4) refusing to call a witness to prove his case; (5) refusing to investigate the crime scene as Defendant requested; (6) failing to fully use the evidence in discovery–the CD recordings, the medical records and the ballistics testing; (7) failing to

impeach the State's witnesses with their prior statements; and (8) not having knowledge that reckless conduct is a lesser-included offense of aggravated battery with a firearm.

¶ 23 The trial judge stated that if, after a preliminary *Krankel* inquiry, she believed Defendant needed additional discovery or a new attorney, she would provide that. Defendant's public defender was sworn in as a witness and questioned by the State about each of Defendant's claims of ineffective assistance and the State asked the public defender to explain her decisions. Defendant was given the opportunity to explain why the public defender was ineffective. The State added its own argument as to why the additional testimony or evidence that Defendant wanted would not have assisted his case or changed the outcome.

¶ 24 At the conclusion of the inquiry, the trial judge denied Defendant's motion. The trial judge asked Defendant if he wanted appointed counsel for post trial motions and sentencing. The Defendant responded that he did. Defendant asked for an attorney outside of the public defender's office, but the trial judge appointed an assistant public defender over his objections. Cocounsel at trial represented defendant at the motion for a new trial and at sentencing. The motion for new trial was denied.

¶ 25 A hearing in aggravation and mitigation was held. The trial judge sentenced defendant to 30 years in the Illinois Department of Corrections for aggravated battery and 7 years for unlawful use of a weapon by a felon, but found that the sentence for unlawful use of a weapon would merge with the aggravated battery count. The trial court found that Defendant was entitled to 871 days of presentence custody.

¶ 26 A notice of appeal was timely filed.

¶ 27                      ANALYSIS

¶ 28    Defendant raises four issues for our review: (1) whether the trial court erred when it refused to instruct the jury on the offense of reckless conduct; (2) whether the trial court conducted an improper and adversarial preliminary *Krankel* hearing into Defendant's *pro se* allegations of ineffective assistance of counsel; (3) whether this court should order Defendant's mittimus corrected to reflect that the trial judge merged Defendant's conviction for unlawful use of a firearm by a felon into his conviction for aggravated battery with a firearm; and (4) whether this court should order the Defendant's fines, fees, and costs order corrected.

¶ 29    We find that the trial court did not err when it refused to instruct the jury on the offense of reckless conduct. The State also agrees that Defendant's mittimus should be corrected. We direct the circuit court to correct the fines, fees, and costs orders as set forth below. Finally, since the State agrees that an improper *Krankel* hearing took place, we remand for a new *Krankel* hearing.

¶ 30    The first issue raised by Defendant is whether the trial court erred when it failed to tender an instruction to the jury on the lesser-included offense of reckless conduct. As the decision to allow a jury instruction is the province of the trial court, absent an abuse of discretion, refusal of a proposed jury instruction will not be reversed. *People v. Garcia*, 165 Ill. 2d 409, 432 (1995). Where some credible evidence exists to support an instruction for a lesser offense, it is an abuse of discretion to fail to give that instruction. *People v. DiVincenzo*, 183 Ill. 2d 239, 249 (1998). However, whether a defendant has met the evidentiary minimum for a certain jury instruction is a matter of law and our review is *de novo*. *People v. Luckett*, 339 Ill. App. 3d 93, 99 (2003). Here, the trial court found that Defendant failed to meet the evidentiary minimum, so our review is *de novo*.

¶ 31 Slight evidence in the record, which if believed by the jury would reduce a crime to a lesser-included offense, warrants an instruction defining the lesser-included offense. *People v. Roberts*, 265 Ill. App. 3d 400, 402-03 (1994). Still, "[a] lesser included offense instruction is required only when the evidence reveals that the jury could rationally find the defendant guilty of the lesser offense yet acquit the defendant of the greater offense. [citation.] A lesser included offense instruction is not required when the evidence shows that the defendant is either guilty of the greater offense or not guilty of any offense." *People v. Cardamone*, 381 Ill. App. 3d 462, 508 (2008).

¶ 32 "A person commits aggravated battery [with a firearm] when, in committing a battery, he or she knowingly *** [d]ischarges a firearm *** and causes any injury to another person." 720 ILCS 5/12-3.05(e)(1) (West 2012). A person is considered to act intentionally "to accomplish a result or engage in conduct *** when his conscious objective or purpose is to accomplish that result or engage in that conduct." 720 ILCS 5/4-4 (West 2012); *People v. Renteria*, 232 Ill. App. 3d 409, 416 (1992). A person acts knowingly with respect to his conduct when he "is consciously aware that that result is practically certain to be caused by his conduct." 720 ILCS 5/4-5(b) (West 2012). In contrast, a person commits reckless conduct when he or she, by any means lawful or unlawful, recklessly performs an act or acts that: (1) cause bodily harm to or endanger the safety of another person; or (2) cause great bodily harm or permanent disability or disfigurement to another person. 720 ILCS 5/12-5 (West 2012). "Reckless conduct generally involves a lesser degree of risk than conduct that creates a strong probability of death or great bodily harm." *DiVincenzo*, 183 Ill. 2d at 250. Whether a reckless charge is warranted is based on the facts and circumstances of each case. *Id.* at 250-51.

¶ 33    Defendant argues that a juror could have concluded from Brown's testimony that Defendant only intended to scare Brown when he fired the first two shots, while the injury occurred during the struggle in which they both had their hands on the gun.  The Defendant argues that a juror could thus conclude he acted recklessly in having the gun or firing the gun in the first place and the injury occurred during the struggle by either Defendant's reckless firing or by Brown's own attempt to control the gun.  The evidence does not support Defendant's contention.

¶ 34    Defendant's argument is unpersuasive and not supported by the evidence in the record.  Furthermore, "Illinois courts have consistently held that when the defendant intends to fire a gun, points it in the general direction of his or her intended victim, and shoots, such conduct is not merely reckless ***." *People v. Jackson*, 372 Ill. App. 3d 605, 613-14 (2007).  Such is the case here.

¶ 35    The evidence established that Brown, who was not armed, was standing outside the Bar with Stewart when they were approached by Defendant.  Brown testified that Defendant seemed irritated and offended by the lack of a hand shake, so Defendant returned to his vehicle, reached for something under his seat and then drove away.  A short while later Defendant returned while Brown and Stewart were still outside.  Brown testified that Defendant came within one or two feet of him and asked to have a word.  Brown replied "no."  Then, Brown testified that Defendant pointed his hand that was in his pants pocket and fired a shot through his pants pocket.  Brown then pushed Stewart and another woman inside the Bar.  Defendant then pulled out the gun and shot at Brown a second time.  At that point, a struggle between Brown and the Defendant ensued.  During the struggle, Defendant's firearm discharged again, striking Brown in the thigh.

¶ 36    The facts established at trial demonstrate that the Defendant approached Brown with a firearm concealed in his pocket.  Defendant discharged the firearm from the concealed location then removed it from his pocket and again fired at Brown.  Brown was then shot in the ensuing struggle between himself and the Defendant.  Nothing in the record supports Defendant's contention that he only intended to scare Brown when he fired the first two shots.

¶ 37    Defendant's reliance on *People v. Roberts* is misplaced.  265 Ill. App. 3d 400 (1994).  In that case, the victim testified that defendant pointed a gun to his head during an argument and that the victim slapped the defendant's hand away, which caused the gun to discharge and strike the victim in the leg.  *Id.* at 402.  The defendant testified that during the argument with the victim, a gun was hanging out of his pants' pocket and that he and the victim both reached for it. *Id.*  Then, the victim got a hold of the gun, the two struggled for control of the gun, and the gun discharged three times during the struggle.  The defendant denied ever having pointed the gun at the victim's head and that at no time was he able to control the gun.  *Id.*  The appellate court held that both the defendant's and victim's testimonies supported an instruction on reckless conduct. *Id.* at 403.  The appellate court noted that the jury could have found that it was merely the defendant's intent to scare the victim when he pointed the gun at him and that it was the victim's act of slapping the defendant's hand that caused the gun to discharge.  *Id.*  Alternatively, the jury could have believed defendant's testimony and found him guilty of the lesser-included offense of reckless conduct.

¶ 38    This case presented a completely different set of circumstances from *Roberts*.  Unlike *Roberts*, there is no dispute as to Defendant's conduct. Here, the record demonstrates the Defendant approached Brown with a concealed weapon and then discharged that weapon in Brown's direction while it was still concealed.  Defendant then withdrew the weapon from his

pocket and fired at Brown again.  It was only after firing at Brown twice that a struggled occurred and Brown was shot when the weapon fired a third time.  Based on the record before us, the trial court did not err when it refused to give an instruction concerning reckless conduct.

¶ 39   Next, Defendant contends that the trial court conducted an improper *Krankel* hearing.  In response, the State agrees with Defendant's argument.  Accordingly, we reverse the order entered at that hearing and remand this case back to the trial court for a new *Krankel* hearing.[1]

¶ 40   Defendant next contends that his mittimus should be corrected to reflect the trial court's merger of his unlawful use of a firearm by a felon conviction into his aggravated battery with a firearm conviction.  In its response, the State concedes that Defendant's mittimus should be corrected.  Accordingly, we order that Defendant's mittimus be corrected to reflect a single conviction for aggravated battery with a firearm in accordance with the trial court's merger order.

¶ 41   Next, Defendant takes issues with various fines and fees assessed to him following his conviction.

¶ 42   First, Defendant argues the $250 DNA analysis fee should be vacated.  The State agrees.  Accordingly, the $250 DNA analysis fee is vacated.

¶ 43   Next, Defendant argues that the $30 minor traffic or ordinance violation fee and the $25 quasi-criminal complaint conviction fee should be vacated.  In response, the State agrees both those fees should be vacated, however, the State then argues that the $190 felony complaint fee should be assessed.  In reply, the Defendant concedes he should be assessed that fee.  Accordingly, we order that the $30 minor traffic fee and $25 quasi-criminal conviction fee should be vacated.  We further order that Defendant be assessed the $190 felony complaint fee.

---

[1] Defendant requests that the new hearing be before a different judge.  The original trial judge has since retired, so on remand the case will automatically receive a new judge.

¶ 44    Next, Defendant argues that the $2 fine for Public Defender Records Automation was assessed in violation of *ex post facto* principles.  Because the imposition of fines and fees raises a question of statutory interpretation, we review the imposition of this fee *de novo*. *People v. Price*, 375 Ill. App. 3d 684, 697 (2007).

¶ 45    Our supreme court has cautioned that despite the label as a fee, certain assessments imposed pursuant to conviction are fines.  *People v. Graves*, 235 Ill. 2d 244 (2009).  The nature of an assessment determines whether the assessment constitutes a fine or fee.  Fines are "pecuniary punishment imposed as part of a sentence on a person convicted of a criminal offense."  *People v. Jones*, 223 Ill. 2d 569, 581 (2006) (internal quotation marks omitted).  Alternatively, fees do not "punish a defendant in addition to the sentence he received, but instead [are] a collateral consequence of the defendant's conviction that is compensatory in nature."  *Id.* (emphasis and internal quotation marks omitted).  In reviewing whether an assessment is a fine or a fee, the supreme court considers the most important fact to be whether the charge seeks to compensate the state for any costs incurred as the result of prosecuting the defendant.  *Id.* at 600.

¶ 46    In *People v. Bowen*, the appellate court addressed this issue and found that the $2 Public Defender Records Automation charge was a fee not a fine.  *People v. Bowen*, 2015 IL App (1st) 132046, ¶¶ 62-64.  We agree with the *Bowen* court that the Public Defender assessment is a fee. See *Id.* at ¶ 65 (concluding that "because the statutory language of both the Public Defender and State's Attorney Records Automation fees is identical except for the name of the organization, we find no reason to distinguish between the two statutes, and conclude both charges constitute fees").  Accordingly, the $2 Public Defender Records Automation fee charged to Defendant did not violate *ex post facto* principles.

¶ 47    Defendant contends he is entitled to presentence incarceration credit toward the State Police Operations charge and several other fines imposed. The State agrees that Defendant is entitled to presentence incarceration credit toward eligible fines. Both the Defendant and the State agree that the Defendant is entitled to presentence incarceration credit of $5 for each of 871 days he spent in custody prior to sentencing. Accordingly, both parties agree Defendant should receive a total credit of $4,355. This should be applied to cover the $10 Mental Health Court charge, $5 Youth Diversion/Peer Court charge, $5 Drug Court charge, $30 Children's Advocacy Center charge, and $15 State Police Operations charge (for a total credit of $65).

¶ 48    Finally, Defendant contends and the State agrees that fines, fees, and costs should be corrected. Based on the above, we order that the fines, fees and costs order to reflect a total of $527 ($150 in fines and $377 in fees and costs) with a presentence incarceration credit of $65, for a total amount still owed of $462.

¶ 49                        CONCLUSION

¶ 50    Based on the above, we affirm the trial court's ruling refusing to give a jury instruction on reckless conduct.

¶ 51    We order that Defendant's mittimus be corrected to reflect a single conviction for aggravated battery with a firearm in accordance with the trial court's merger order.

¶ 52    We order Defendant's fines, fees, and costs order be corrected as discussed above to show a total of $527 ($150 in fines and $377 in fees and costs) with a presentence incarceration credit of $65, for a total amount still owed of $462.

¶ 53    Finally, we reverse the order entered at Defendant's previous *Krankel* hearing and remand for a new one.

¶ 54    Affirmed in part, reversed in part, remanded.