# Illinois Official Reports

## Appellate Court

---

### *People v. Mullen*, 2018 IL App (1st) 152306

---

| | |
|---|---|
| Appellate Court Caption | THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. DAVID MULLEN, Defendant-Appellant. |
| District & No. | First District, First Division<br>Docket No. 1-15-2306 |
| Filed | February 5, 2018 |
| Decision Under Review | Appeal from the Circuit Court of Cook County, No. 14-CR-17062; the Hon. Vincent M. Gaughan, Judge, presiding. |
| Judgment | Remanded for hearing on reimbursement for the public defender; order assessing fines, fees, and costs modified. |
| Counsel on Appeal | Michael J. Pelletier, Patricia Mysza, and Robert Hirschhorn, of State Appellate Defender's Office, of Chicago, for appellant.<br><br>Kimberly M. Foxx, State's Attorney, of Chicago (Alan J. Spellberg, Mary P. Needham, and Mari R. Hatzenbuehler, Assistant State's Attorneys, of counsel), for the People. |
| Panel | JUSTICE MIKVA delivered the judgment of the court, with opinion.<br>Presiding Justice Pierce and Justice Harris concurred in the judgment and opinion. |

**OPINION**

¶ 1        Defendant David Mullen was convicted of robbery. Mr. Mullen does not challenge his conviction. The issues in his appeal concern only the fines and fees imposed in his case. Mr. Mullen argues that the trial court erred in assessing a $500 public defender attorney fee against him because he was not provided with the statutorily mandated hearing. Mr. Mullen also contends that the trial court erred by not giving him a presentence incarceration credit and by failing to properly calculate which monetary assessments were eligible for offset by such a credit. For the following reasons, we remand for a statutorily compliant hearing on whether Mr. Mullen should be required to reimburse the State for any part of the cost of his representation by the public defender's office. We also direct that Mr. Mullen's fines and fees order be modified to accurately reflect the presentence incarceration credit to which he is entitled.

¶ 2                              I. BACKGROUND

¶ 3        Mr. Mullen was charged with armed robbery and unlawful restraint. He was appointed a public defender. Prior to trial, the State filed a motion for reimbursement of funds for Mr. Mullen's use of the services of the public defender's office.

¶ 4        At Mr. Mullen's bench trial, the State presented witnesses who testified that, on September 13, 2014, Mr. Mullen followed Nyiesha Maclin into the vestibule of her apartment building. Once inside, Mr. Mullen grabbed Ms. Maclin by the neck and threw her against a wall. Mr. Mullen took Ms. Maclin's purse, keys, cell phone, and a ring. Ms. Maclin's cell phone had a remote tracking application, which Chicago police officers used to track her phone to a liquor store. At the store, the officers had Ms. Maclin remotely trigger her cell phone's alarm, allowing them to locate and arrest Mr. Mullen. The trial court found Mr. Mullen guilty of robbery and unlawful restraint. The court merged Mr. Mullen's unlawful restraint conviction into his robbery conviction, and the case proceeded to sentencing.

¶ 5        Because of his criminal background, the trial court sentenced Mr. Mullen as a Class X offender to seven years' imprisonment. At the end of the sentencing hearing, Mr. Mullen's public defender had the following exchange with the court regarding the State's motion for reimbursement of the cost of the public defender's representation:

> "THE COURT: How many times have you appeared on this?
> DEFENSE COUNSEL: Seven, [Y]our Honor.
> THE COURT: You went to trial on this?
> DEFENSE COUNSEL: Yes,[Y]our Honor.
> THE COURT: Attorney fees are $500."

¶ 6        In addition to the public defender fee, the other fines and fees assessed against Mr. Mullen appear on a form titled "ORDER ASSESSING FINES, FEES AND COSTS." It is a preprinted order provided by the clerk of the circuit court of Cook County. This order, which will be referred to as the fines and fees order, lists certain assessments as "FINES OFFSET by the $5 per day pre-sentence incarceration credit pursuant to 725 ILCS 5/110-14(a)." In Mr. Mullen's case, the fines imposed in this category included the following: a $10 mental health court fine (55 ILCS 5/5-1101(d-5) (West 2014)), a $5 youth diversion/peer court fine (*id.* § 5-1101(e)), a

$5 drug court fine (*id.* § 5-1101(f)), and a $30 children's advocacy center fine (*id.* § 5-1101(f-5)).

¶ 7    The fines and fees order also lists "FINES *NOT* OFFSET by the $5 per-day pre-sentence incarceration credit" (emphasis in original), which Mr. Mullen had none of, and "FEES AND COSTS *NOT* OFFSET by the $5 per-day pre-sentence incarceration credit" (emphasis in original), including the following: a $190 felony complaint filing fee (705 ILCS 105/27.2a(w)(1)(A) (West 2014)), a $60 felony complaint conviction fee (55 ILCS 5/4-2002.1(a) (West 2014)), a $20 probable cause hearing fee (*id.*), a $15 automation fee (705 ILCS 105/27.3a(1.5) (West 2014)), a $15 state police operations fee (*id.*), a $2 public defender records automation fee (55 ILCS 5/3-4012 (West 2014)), a $2 state's attorney records automation fee (*id.* § 4-2002.1(c)), a $15 document storage fee (705 ILCS 105/27.3c (West 2014)), a $5 electronic citation fee (*id.* § 27.3e), a $25 court services fee (55 ILCS 5/5-1103 (West 2014)), a $50 court system fee (*id.* § 5-1101(c)), a $10 arrestee's medical costs fund fee (730 ILCS 125/17 (West 2014)), and a $10 probation and court services operations fee (705 ILCS 105/27.3a(1.1) (West 2014)).

¶ 8    Mr. Mullen's fines and fees order reflects that he spent 263 days in pretrial custody and simply states "(Allowable credit toward fine will be calculated)," without specifying what monetary credit Mr. Mullen should receive for his presentence incarceration.

## II. JURISDICTION

¶ 10    Mr. Mullen was sentenced on June 2, 2015, and timely filed his notice of appeal on June 5, 2015. This court has jurisdiction pursuant to article VI, section 6, of the Illinois Constitution (Ill. Const. 1970, art. VI, § 6) and Illinois Supreme Court Rules 603 and 606, governing appeals from final judgments of conviction in criminal cases (Ill. S. Ct. Rs. 603, 606 (eff. Feb. 6, 2013)).

## III. ANALYSIS

¶ 12    On appeal, Mr. Mullen argues that the $500 public defender attorney fee assessed against him should be vacated because the trial court imposed it without first conducting a proper hearing under section 113-3.1 of the Code of Criminal Procedure of 1963 (Code) (725 ILCS 5/113-3.1(a) (West 2014)). The State agrees but argues that we should remand for a statutorily compliant hearing rather than vacate the fee outright. Mr. Mullen also asks that we amend his fines and fees order, both because the trial court failed to give him $5 per day of credit for the 263 days he spent in presentence incarceration, and because the court improperly categorized certain assessments as fees rather than fines, making them not subject to that credit. The State agrees that some, but not all, of the assessments were improperly categorized as fees, but insists that Mr. Mullen has forfeited any objection to that mischaracterization. We address each argument in turn.

## A. Public Defender Fee

¶ 14    Mr. Mullen failed to object to the trial court's imposition of a $500 public defender attorney fee at his sentencing hearing. The State concedes that Mr. Mullen's silence was not a forfeiture of this issue, and we agree. Our supreme court has expressly held that forfeiture is "inappropriate" and "should not be applied" when the trial court ignores the statutory

procedures for reimbursement of this public defender fee. *People v. Love*, 177 Ill. 2d 550, 564 (1997); see also *People v. Carreon*, 2011 IL App (2d) 100391, ¶ 11 ("where a trial court imposes [the public defender fee] without following the appropriate procedural requirements, application of the forfeiture rule is inappropriate").

¶ 15 The State concedes that the trial court's inquiry did not sufficiently comport with the statutory hearing requirements outlined in section 113-3.1(a) of the Code. As the State recognizes, to comply with section 113-3.1(a), the hearing must be held within 90 days of the trial court's entry of the final order and must "focus on the foreseeable ability of the defendant to pay reimbursement as well as the costs of the representation provided." *Love*, 177 Ill. 2d at 563. Only where the trial court finds that a defendant has an ability to pay may it order reimbursement for appointed counsel. *Id.*

¶ 16 Although the parties agree that Mr. Mullen did not receive a sufficient hearing, they disagree about the appropriate remedy. According to Mr. Mullen, the trial court's brief exchange with defense counsel about the number of appearances he made was not a "hearing," and because the 90-day statutory timeframe for holding such a hearing has passed, a remand would not be appropriate. The State responds that, although it was a clearly deficient one, the trial court did hold a "hearing" within the mandated timeframe, and urges us to remand the case to the trial court for a compliant hearing. Our supreme court has held that if the trial court conducts "some sort of hearing" within the 90-day statutory timeframe, although that hearing is deficient under section 113-3.1(a), a remand for a more complete hearing is the proper remedy. *People v. Somers*, 2013 IL 114054, ¶¶ 15, 18 (holding that the trial court's three questions about the defendant's ability to pay attorney fees did not fully comply with the statute but qualified as "some sort of hearing" during the 90-day statutory period, and therefore there was no impediment to remanding the cause for a proper hearing).

¶ 17 Whether the trial court's questioning in this case qualifies as "some sort of hearing" was fully resolved by our supreme court's recent decision in *People v. Hardman*, 2017 IL 121453, issued after the briefing in this case was completed. In *Hardman*, as in this case, the hearing consisted solely of the trial court asking the public defender how many times she had appeared. *Id.* ¶ 66. Our supreme court found that this line of questioning, with the parties present, within the 90-day limit and after the State had expressly sought reimbursement for the public defender's services, was a sufficient basis on which to find that "some sort of hearing" had occurred under *Somers*. Thus, in this case, as in *Hardman*, remand for a hearing that satisfies section 113-3.1(a) is the appropriate remedy.

¶ 18 <center>B. Other Fines and Fees</center>

¶ 19 Mr. Mullen next argues that his other assessed fines, fees, and costs should be reduced from $469 to $330 based on his presentence incarceration credit and the mischaracterization of certain assessments as fees rather than fines.

¶ 20 Mr. Mullen's argument is based on section 110-14(a) of the Code, which provides:

"Any person incarcerated on a bailable offense who does not supply bail and against whom a fine is levied on conviction for the offense shall be allowed a credit of $5 for each day so incarcerated upon application of the defendant." 725 ILCS 5/110-14(a) (West 2014).

¶ 21 Under this statute, a defendant who is incarcerated prior to trial earns a presentence incarceration credit that may be applied to fines, but not to fees. *People v. Brown*, 2017 IL App (1st) 150146, ¶ 35 (citing 725 ILCS 5/110-14(a) (West 2012)); *People v. Johnson*, 2011 IL 111817, ¶ 8. "A charge is considered a fee where it [is] assessed in order to recoup expenses incurred by the state, or to compensate the state for some expenditure incurred in prosecuting the defendant." (Internal quotation marks omitted.) *Brown*, 2017 IL App (1st) 150146, ¶ 35. In contrast, a fine is "punitive in nature and is a pecuniary punishment imposed as part of a sentence on a person convicted of a criminal offense." (Internal quotation marks omitted.) *Id.*

¶ 22 Mr. Mullen argues that the following assessments—which the form fines and fees order characterizes as fees—are actually fines for which he should be allowed credit: the $10 arrestees medical cost fee (730 ILCS 125/17 (West 2014)); the $15 state police operations fee (705 ILCS 105/27.3a(1.5) (West 2014)); the $2 public defender records automation fee (55 ILCS 5/3-4012 (West 2014)); the $2 state's attorney records automation fee (*id.* § 4-2002.1(c)); the $10 probation and court services operations fee (705 ILCS 105/27.3a(1.1) (West 2014)); the $25 court services fee (55 ILCS 5/5-1103 (West 2014)); and the $50 court systems fee (*id.* § 5-1101(c)(1)).

¶ 23 Because Mr. Mullen did not raise these challenges before the trial court, the State argues that they are forfeited. We note that, in our experience, defendants rarely, if ever, raise these issues in the trial court and it is this court which routinely addresses these issues for the first time. The State, which itself often forfeits its argument that a defendant has forfeited his or her right to raise a fines and fees issue (see, *e.g.*, *People v. Smith*, 2018 IL App (1st) 151402, ¶ 7), has not done so here, so we first address whether Mr. Mullen has forfeited his right to raise these arguments.

¶ 24 1. Reviewability of Claims for the First Time on Appeal

¶ 25 Mr. Mullen requests that we review his claims under either the plain-error doctrine (citing *People v. Lewis*, 234 Ill. 2d 32, 47-49 (2009)) or our authority under Illinois Supreme Court Rule 615(b). Alternatively, Mr. Mullen claims his trial counsel was ineffective for failing to object at trial to the erroneously imposed fines, fees, and costs.

¶ 26 We agree with Mr. Mullen that we can review whether the assessments against him were properly considered fees as plain error. We also believe that his claims for appropriate presentence incarceration credit are not subject to forfeiture because our supreme court has made clear that claims for such credit under section 110-14 of the Code may be raised "at any time and at any stage of the court proceedings, even on appeal in a postconviction petition." *People v. Caballero*, 228 Ill. 2d 79, 88 (2008).

¶ 27 Before addressing Mr. Mullens's claims—and explaining more fully why we do not believe that they are forfeited—we pause to concur fully with some of the concerns expressed by other members of this court regarding both the fact that it has become customary for defendants to raise arguments about fines and fees for the first time in the appellate court and the complicated, inefficient, and oppressive manner in which fines and fees are frequently assessed against convicted defendants in the trial court.

¶ 28 The form order used in Mr. Mullen's case to assess fines, fees, and costs lists 96 different fines and fees. These are divided into three categories: fines that can be offset, fines that cannot be offset, and fees and costs that are not offset. Notably, the characterizations on the form order do not comport with our settled legal precedent governing what is a fine and what is a fee. The

form includes several items listed as fees and costs not subject to offset that this court has repeatedly held are fines subject to offset. For example, the form characterizes the $15 state police operations fee and the $50 court systems fee as fees "*NOT* OFFSET by the $5 per-day pre-sentence incarceration credit" (emphasis in original). But the State in this case concedes that, under settled precedent, each of these is a fine subject to offset. See *People v. Moore*, 2014 IL App (1st) 112592, ¶ 46 (state police operations fee); *People v. Smith*, 2013 IL App (2d) 120691, ¶ 21 (court systems fee).

¶ 29     As Justice Mason recently and eloquently noted in *Smith*, 2018 IL App (1st) 151402, ¶ 8, "[t]he delay and expense involved in briefing these issues in this court is perhaps the least efficient means of resolving them." Prior to the *Smith* decision, Justice Mason noted in *People v. Grigorov*, 2017 IL App (1st) 143274, ¶ 16, "we find that in the long run, judicial economy would be best served if fines-and-fees issues were resolved expeditiously at the trial court level, rather than requiring the time and expense of an appeal in the first place." And in *People v. Griffin*, 2017 IL App (1st) 143800, although this court refused to allow the defendant to bring a free-floating attack in the appellate court on the order assessing fines and fees because we found that there was no final order being appealed and thus no appellate jurisdiction (*id.* ¶ 25), we also noted that "[c]opious amounts of time, effort, and ink are spent resolving these issues at the appellate level" when they could be better resolved at the trial level and through agreed orders (*id.* ¶ 6). It is particularly troubling to see these issues repeatedly arise on appeal in cases where both sides agree that the assessments were erroneously imposed. See *People v. Bridgeforth*, 2017 IL App (1st) 143637, ¶ 50 ("[G]iven that the State concedes that these assessments were imposed in error, we do not understand the apparent failure of the State and appellate counsel to communicate and resolve these errors by moving for an agreed order in the trial court to correct the errors and eliminate the need to raise and brief additional issues on appeal. *** [S]carce resources can be better directed to address disputed issues.").

¶ 30     The time spent briefing fines and fees issues on appeal is time that attorneys in the Office of the State Appellate Defender and the state's attorney's appeals divisions could be spending on other cases. The backlog in those offices has meant that multiple requests for extensions in briefing schedules are routinely made, usually resulting in years between when a criminal appeal is filed and when the court is able to issue a decision. This means that a criminal defendant may sit in prison for a conviction that is later reversed on appeal, but only after the defendant has already served the complete sentence for that conviction.

¶ 31     It is true, as the court noted in *Grigorov*, that many of these fines and fees are not even collectible. *Grigorov*, 2017 IL App (1st) 143274, ¶ 20. Even so, their imposition matters to defendants, as unpaid fines can subject a defendant to orders of withholding and wage garnishment. As the *Smith* court observed, unpaid fines and fees can "have lasting repercussions for criminal defendants":

> "Unpaid fines (not including fees) in criminal cases may be subject to an order of withholding [citation], which renders a defendant's wages subject to garnishment ***. *** Further, a criminal conviction results in a lien on the defendant's real and personal property. [Citation.] Thirty days after judgment, a defendant's property may be seized or sold to satisfy any unpaid fines and costs of prosecution. *** Unpaid fines and fees may also be the subject of collection actions initiated by the State's Attorney, which entail a 30% surcharge plus 9% interest on the unpaid amount [citation] and unpaid

fines carry with them the threat of imprisonment for an intentional refusal to pay." *Smith*, 2018 IL App (1st) 151402, ¶ 9.

¶ 32 We share these concerns and join the chorus of voices from members of our court urging trial court judges and counsel to address these issues in the first instance in the trial court—by agreement where possible. We also join the call for the legislature to eliminate many of these uncollectible but oppressive assessments, to amend statutory provisions to conform with judicial findings as to which of them are fees and which are fines, and to correctly label the various assessments so that the judiciary can rely on the label in categorizing them. See *People v. Jones*, 223 Ill. 2d 569, 583 (2006) ("the label used by the legislature is not necessarily definitive" where it does not match the "substantive character" of the assessment).

¶ 33 In response to these issues appearing for the first time in appellate court briefs, some of our colleagues have found plain error to be inapplicable and have construed *Caballero* narrowly, to allow the appellate court to make ministerial corrections but not to permit that court to recharacterize as a fine an assessment improperly labeled as a fee. See, *e.g.*, *Smith*, 2018 IL App (1st) 151402, ¶¶ 4-6; *People v. Christie*, 2017 IL App (1st) 151512-U, ¶ 7; *People v. Brown*, 2017 IL App (1st) 150203, ¶¶ 36, 40; *Griffin*, 2017 IL App (1st) 143800, ¶¶ 9, 24-25, *appeal allowed*, No. 122549 (Ill. Nov. 22, 2017). Indeed, the author of this opinion has been a signatory to multiple orders in which the court stated, in *dicta*, that an error in assessing fines and fees was not plain error. See, *e.g.*, *People v. Kelley*, 2017 IL App (1st) 150340-U, ¶¶ 35-36; *People v. Mitchell*, 2017 IL App (1st) 141486-U, ¶ 40.

¶ 34 However, as noted above, the reality is that the State often—although not always—opts not to object to the defendant raising these arguments for the first time on appeal. Thus, this court has also frequently gone on to address the merits of those issues, providing reductions and setoffs to the defendant when appropriate. See, *e.g.*, *Smith*, 2018 IL App (1st) 151402, ¶¶ 7, 17; *Kelley*, 2017 IL App (1st) 150340-U, ¶¶ 36, 43; *People v. Dillard*, 2017 IL App (1st) 151432-U, ¶¶ 6, 13; *People v. Clark*, 2017 IL App (1st) 150740-U, ¶¶ 18, 25, *appeal allowed*, No. 122495 (Ill. Sept. 27, 2017). In other words, not only are these issues often addressed regardless of a defendant's forfeiture, but the State, rather than the court, often determines whether a defendant even *can* seek relief on these assessments. While we fully agree with the view expressed by some of our colleagues that consideration of these issues in the first instance at the appellate level is neither desirable nor efficient, we do not agree that plain error is inapplicable or that our review of section 110-14 of the Code issues is limited to ministerial errors.

¶ 35 First, we address plain error. Our supreme court has made clear that there is no *de minimis* exception to a plain-error analysis. *Lewis*, 234 Ill. 2d at 48; see also *People v. Sebby*, 2017 IL 119445, ¶ 69 ("Plain errors by definition are substantial."). In *Lewis* it stated, in no uncertain terms:

> "[W]e do not believe a *de minimus* exception can be placed on plain-error review. The exception would be difficult to implement because it would require declaring when the dispute becomes significant rather than *de minimus*. The question would necessarily arise as to where the line should be drawn. More importantly, a *de minimus* exception is inconsistent with the fundamental fairness concerns of the plain-error doctrine. Plain-error review focuses on the fairness of a proceeding and the integrity of the judicial process. [Citations.] An error may involve a relatively small amount of money or unimportant matter, but still affect the integrity of the judicial process and the

- 7 -

fairness of the proceeding if the controversy is determined in an arbitrary or unreasoned manner." *Lewis*, 234 Ill. 2d at 48.

¶ 36    We find the supreme court's holding in *Lewis* to be applicable here. In *Lewis*, the defendant was sentenced to a term of probation and ordered to pay a $100 street-value fine for possession of a controlled substance. *Id.* at 34. The defendant did not object to the fine before the trial court. *Id.* at 35. His only argument on appeal was that the trial court committed plain error by imposing the $100 street-value fine with no evidentiary basis to determine the street value of the drugs at issue. *Id.* The appellate court refused to apply the plain-error doctrine, ruling that its application in that case would " 'essentially swallow[ ]' the general rule of forfeiture if it applied to a sentencing sanction as minimal as the $100 fine involved in this case." *Id.* at 36 (quoting *People v. Lewis*, 379 Ill. App. 3d 336, 340-41 (2008)).

¶ 37    On appeal, our supreme court noted that, prior to the appellate court's decision in *Lewis*, appellate courts had consistently held that imposition of a street-value fine without a sufficient evidentiary basis was plain error. *Id.* at 47. By declining to follow those other cases, the appellate court had "essentially adopted a *de minimus* exception for plain-error review." *Id.* As noted above, our supreme court emphatically rejected such an exception, finding plain error was applicable because the decision was "not based on applicable standards and evidence, but appear[ed] to be arbitrary." *Id.* at 48.

¶ 38    We acknowledge that the situation in *Lewis* was, as the supreme court observed, "more than a simple mistake in setting the fine" and that, instead, it was "a failure to provide a fair process for determining the fine based on the current street value of the controlled substance." *Id.* But here, too, the issue is more than a "simple mistake in setting the fine." Mr. Mullen contends that the assessment against him of fees not subject to setoff was arbitrary and not authorized by law. We find that any distinction between this case and *Lewis* is one without a difference. We can and should review these legal errors in the assessments of fines and fees as plain error.

¶ 39    In addition to properly relying on plain error, we can also consider Mr. Mullen's claim that he was not given all of the presentence credit to which he is entitled as an application for presentence credit under section 110-14(a) of the Code.

¶ 40    In *Caballero*, our supreme court interpreted that statute as allowing a defendant to argue that he was improperly denied a credit of $5 per day "at any time and any stage of the court proceedings" because any such argument should be viewed as "an application of the defendant" under the statute, which does not provide any specific time limitations. *Caballero*, 228 Ill. 2d at 88. In *Caballero*, our supreme court held that defendant's request for presentence credit should be considered, despite the issue having been raised for the first time on appeal from the denial of a postconviction petition. *Id.* at 87-88. The only caveat our supreme court added is that the basis for granting the application must be "clear and available from the record." *Id.* at 88.

¶ 41    Some of our colleagues have recently held that *Caballero* is limited, drawing a distinction between permitting a defendant to "raise his claim" for a "ministerial" *per diem* credit calculation and making "substantive" arguments that the credit should have been, but was not, applied to certain assessments. *Brown*, 2017 IL App (1st) 150203, ¶¶ 36, 40; see also *Smith*, 2018 IL App (1st) 151402, ¶ 6 (following *Brown*). But the court in *Caballero* stated that a defendant may bring a section 110-14 claim at "any" time and "any" stage of proceedings, requiring only that the error complained of is "clear and available from the record." *Caballero*,

228 Ill. 2d at 88. We find nothing in *Caballero* or in section 110-14 that supports a distinction between ministerial and substantive section 110-14 claims. Thus, we could also consider Mr. Mullen's arguments that certain assessments were improperly treated as fees as an application for presentence incarceration credit, which may be raised at any time.

¶ 42    Because we find that Mr. Mullen's fines and fees claims are reviewable under both the plain-error doctrine and section 110-14, we need not consider whether his counsel was ineffective.

¶ 43                                    2. Specific Claims of Error

¶ 44    We turn now to the specific claims of error that Mr. Mullen raises as to assessments which are labeled as fees, but which he contends are actually fines. The parties agree on the correct categorization of some, but not all, of the assessments. The State concedes that both the $15 state police operations "fee" and the $50 court systems "fee" should be treated as fines, to which Mr. Mullen is entitled to have his presentence incarceration credit applied. Mr. Mullen concedes in his reply brief that he is not entitled to a credit offset for the $25 court services assessment. This leaves four remaining assessments at issue: the public defender and state's attorney records automation assessments of $2 each, the $10 arrestee's medical costs assessment, and the $10 probation/court services assessment.

¶ 45                             a. $2 Records Automation Assessments

¶ 46    The Counties Code entitles both the public defender and the state's attorney to an assessment of $2 "for establishing and maintaining automated record keeping systems." 55 ILCS 5/3-4012 (West 2014) (public defender's records automation assessment); *id.* § 4-2002.1(c) (state's attorney records automation assessment).

¶ 47    Mr. Mullen cites *People v. Camacho*, 2016 IL App (1st) 140604, ¶ 56, in which a division of this court found these assessments to be fines. But as even the *Camacho* court recognized, "every [other] published decision on this matter has determined that both the State's Attorney and public defender records automation assessments are fees." *Id.* ¶ 52 (citing *People v. Maxey*, 2016 IL App (1st) 130698, ¶¶ 142-44, *People v. Reed*, 2016 IL App (1st) 140498, ¶¶ 16-17, *People v. Green*, 2016 IL App (1st) 134011, ¶ 46, *People v. Bowen*, 2015 IL App (1st) 132046, ¶¶ 62-65, *People v. Bradford*, 2014 IL App (4th) 130288, ¶ 41, *rev'd on other grounds*, 2016 IL 118674, and *People v. Rogers*, 2014 IL App (4th) 121088, ¶ 30).

¶ 48    We agree with the bulk of authority that these assessments are properly categorized as fees because they are not intended to punish the defendant, but rather "are designed to compensate [the public defender and the state's attorney] for the expenses they incur in updating their automated record-keeping systems while prosecuting and defending criminal defendants." *Brown*, 2017 IL App (1st) 150146, ¶ 38. Accordingly, these assessments may not be offset by Mr. Mullen's presentence incarceration credit.

¶ 49                          b. $10 Arrestee's Medical Costs Assessment

¶ 50    Section 17 of the County Jail Act provides that "[t]he county shall be entitled to a $10 fee for each conviction or order of supervision for a criminal violation ***. *** All such fees collected shall be deposited by the county in a fund to be established and known as the County

Jail Medical Costs Fund." 730 ILCS 125/17 (West 2014). It further states that the assessment "shall not be considered a part of the fine for purposes of any reduction in the fine." *Id.*

¶ 51 Mr. Mullen argues that this assessment must be considered a fine entitled to offset, citing *People v. Warren*, 2016 IL App (4th) 120721-B. There, the Fourth District found the arrestee's medical costs assessment was a fine for the purpose of determining whether the clerk of the circuit court—as opposed to the circuit court itself—had the authority to impose the assessment (see *People v. Fontana*, 251 Ill. App. 3d 694, 709 (1993) ("the imposition of a fine is a judicial act which can be performed only by a judge")). *Warren*, 2016 IL App (4th) 120721-B, ¶¶ 89, 119. This district, however, has found the same assessment is a fee because the medical costs fund functions, in essence, as an insurance fund for medical costs incurred by prisoners. *People v. Jones*, 397 Ill. App. 3d 651, 664 (2009).

¶ 52 We need not resolve the apparent conflict in these two holdings. As the Fourth District recognized in *Warren*, the statute states that this assessment "shall not be considered a part of the fine for purposes of any reduction in the fine," which the court read as a reference to presentence incarceration credit under section 110-14. Thus, even if it were a fine, following the reasoning in *Warren*, it would not be subject to offset under section 110-14. We reject Mr. Mullen's claim for offset as to this assessment.

¶ 53                                    c. $10 Probation/Court Services Assessment

¶ 54 Section 27.3a(1.1) of the Clerks of Courts Act provides that the "clerk of the circuit court in any county that imposes a fee" under subsection 1 of that Act, to help defray the cost of establishing and maintaining automated record keeping systems in the offices of the clerks of the circuit court, "shall also charge and collect an additional $10 operations fee for probation and court services department operations." 705 ILCS 105/27.3a(1.1) (West 2014). The assessment "shall be paid by the defendant in any felony, traffic, misdemeanor, local ordinance, or conservation case upon a judgment of guilty or grant of supervision." *Id.*

¶ 55 First, we note that the plain language of the statute itself gives the clerk of the circuit court authority to impose this assessment. *Id.* Because the clerk of the circuit court is not authorized to impose fines (*Fontana*, 251 Ill. App. 3d at 709), the statute's language, alone, suggests that the legislature intended this assessment to be a fee.

¶ 56 While there does not appear to be published decisions determining whether this assessment is a fine or fee in this district, the Fourth District has consistently held that this assessment should be considered a fee where, as in this case, the probation office was involved in preparing a presentence investigation report for the defendant, making the assessment a fee to recover a cost actually incurred in the defendant's prosecution. *Rogers*, 2014 IL App (4th) 121088, ¶ 27; *People v. Staake*, 2016 IL App (4th) 140368, ¶ 106; *Bradford*, 2014 IL App (4th) 130288, ¶¶ 38-40, *rev'd on other grounds*, 2016 IL 118674. But see *People v. Carter*, 2016 IL App (3d) 140196, ¶¶ 56-57 (finding, contrary to the Fourth District cases, that the probation/court services assessment is a fine because the assessment is imposed regardless of whether the defendant used probation office services). We think the Fourth District cases provide a rational interpretation of the legislative intent that this is a fee. Mr. Mullen is thus not entitled to offset for this assessment.

- 10 -

d. Final Calculation of Credit Offset

As a final matter, Mr. Mullen also raises the concern that, although the fines and fees order states that an "[a]llowable credit towards a fine will be calculated," no such calculation appears in the order. This is frequently the case with fines and fees orders, and we are unsure whether the presence or absence of a calculation affects whether a defendant receives the necessary credit. But to ensure that, here, Mr. Mullen receives his due credit, we direct the clerk to modify the fines and fees order to reflect the $115 offset to be applied against the $469 that Mr. Mullen owes. This offset includes the $50 that the fines and fees order already recognizes are fines, plus the additional $65 in assessments that we have found in this opinion are fines. With this offset, the fines and fees order should reflect that the "total" amount Mr. Mullen owes is $354.

IV. CONCLUSION

We remand this cause for a hearing that fully complies with section 113-3.1(a) of the Code. We further direct the clerk of the circuit court to modify the fines, fees, and costs order to reflect his credit for presentence incarceration such that the total amount owed by Mr. Mullen, not offset by his presentence incarceration credit, is $354.

Remanded for hearing on reimbursement for the public defender; order assessing fines, fees, and costs modified.